Larry **HARGROVE**, Appellant,

v.

The **STATE** of Texas, Appellee.

Nos. 04–05–00076–CR, 04–05–00077–CR.

Court of Appeals of Texas, San Antonio.

July 19, 2006.

Discretionary Review Refused Dec. 6, 2006.

Cornelius N. Cox, Law Office of Cornelius N. Cox, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty., San Antonio, for appellee.

Sitting: SARAH B. DUNCAN, Justice, PHYLIS J. SPEEDLIN, Justice, REBECCA SIMMONS, Justice.

## OPINION

Opinion by PHYLIS J. SPEEDLIN, Justice.

Appellant Larry Hargrove appeals his convictions for possession of more than four ounces but less than five pounds of marihuana (habitual offender), and unlawful possession of body armor by a felon. Hargrove received a twenty-year sentence for the possession of marihuana, and a life sentence for the possession of body armor, which run concurrently. On appeal, Hargrove raises two issues: (1) whether the evidence is factually and legally insufficient to support his convictions; and (2)

whether the trial court erred by admitting extraneous offense evidence during the guilt/innocence phase of trial. We affirm the judgment of the trial court.

## FACTUAL AND PROCEDURAL BACKGROUND

On December 1, 2003, San Antonio Police Department officers executed an outstanding felony arrest warrant for Hargrove at a residence located at 8443 Cascade Ridge, and seized marihuana, a bulletproof vest, multiple firearms and ammunition, and digital scales. Officer Nick Stromboe testified at trial that, based on information from a confidential informant that narcotics and weapons were inside the home, he had been conducting surveillance of the home for approximately ten days. During that period, Stromboe observed vehicle traffic at the house that in his experience was consistent with narcotics trafficking. Upon discovering that Hargrove had an outstanding arrest warrant, Stromboe contacted several other officers to assist him in executing the warrant. Detective Darron Phillips testified at trial that Stromboe asked him to assist in the execution of the warrant, and he also conducted surveillance at the residence for approximately one hour the day before executing the warrant; he also witnessed vehicle activity at the house that he believed was consistent with drug transactions.[1]

When the officers arrived to execute the outstanding arrest warrant, Officer Stromboe approached the front door and began knocking and calling out, "Police, open up." He stated he heard noise from the television or radio inside the house. At the same time, Detective Phillips walked around to the back of the house and saw Hargrove come out the back door. Phillips jumped the fence and approached Hargrove, informing him of the outstanding arrest warrant and asking his name. Hargrove gave a false name before finally admitting that he was Larry Hargrove. When Stromboe joined Phillips in the backyard, Hargrove was sitting in a chair on the porch where the officer talked to him for approximately 15 minutes. Hargrove asked the officers to go inside the house to avoid the neighbors. Inside the house, Hargrove agreed the officers could search the house and executed a written consent to search form. Detective Phillips first checked the house to confirm that Hargrove was alone. Then, Detective Phillips and the other officers searched the house. Phillips stated he found approximately four pounds of marihuana inside a brown bag covered by a blanket on top of the washing machine in the utility room. The officers also found two sets of digital scales on the kitchen counter, which Phillips testified are used to weigh narcotics for pricing purposes. In the master bedroom, Phillips found a bulletproof vest and loaded shotgun behind the door. In addition, the officers found a loaded pistol under a pillow on the bed and a loaded handgun between the mattress. The officers also collected eight more unloaded firearms of various calibers and types that were inside the closet and laying on the bedroom floor in plain view. They also seized a "substantial amount" of ammunition of various types.[2] Phillips testified at trial that it is "fairly common" to find

---

1. Phillips testified that when a vehicle would park at the house, one person would go inside and come out approximately two to ten minutes later. This pattern was repeated four times during the hour he observed the home.

2. Phillips testified that some of the ammunition was very unusual and hard to find, such as "breeching rounds" which are used to disrupt the locking mechanism on a door in order to break through the door.

drugs and weapons together, but that it is "rare" to find a bulletproof vest with an "arsenal of weapons." The eleven firearms were admitted into evidence at trial, over Hargrove's objection that they were unduly prejudicial. Finally, the officers discovered a recent City Public Service bill addressed to Hargrove at the residence, and clothing in the master bedroom closet that appeared to belong to Hargrove.

Hargrove's ex-girlfriend, Robin Prince, testified at trial in his defense. Prince stated that Hargrove had a key to the house and was "staying" there, but was not sleeping with her in the master bedroom and did not spend every night there. She acknowledged that Hargrove was paying a number of household bills, including the mortgage which was in both their names. Prince stated that she had no knowledge of the marihuana, and that, as far as she knew, it was not there when she left the house that morning. She stated Hargrove was alone at the house when she left. Prince also stated that she did not use the digital scales in the kitchen. With respect to the bulletproof vest, Prince testified that she had purchased the bulletproof vest for an employee to use in a previous car repossession business she owned with Hargrove. She stated that the employee had returned the vest, and it was kept behind the master bedroom door with a shotgun. Prince stated Hargrove knew about the vest and agreed that he had access to it. Prince further testified that she was in the Air Force and had been trained to use an M–16 and a .45 caliber handgun. With respect to the other ten firearms, Prince stated that she had purchased three of the guns, although she did not know the type of one, and was aware of some but not all of the other firearms found in her bedroom. She stated she was not aware of the loaded pistol under one of the pillows on the bed. She also said

Hargrove had taken one of the firearms out of the house.

Hargrove was indicted for possessing the marihuana, and because he had a previous felony conviction, he was also indicted for possessing the body armor. The two cases were consolidated for trial, and the jury returned a guilty verdict on both offenses. Hargrove appealed.

## LEGAL AND FACTUAL SUFFICIENCY

In his first issue, Hargrove contends that the evidence is legally and factually insufficient to prove he possessed the marihuana and the bulletproof vest.

### Standards of Review

In determining the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex.Crim.App.2005). The jury, as trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony; therefore, reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex.Crim. App.1998). A jury is also permitted to make reasonable inferences from the evidence. *Id.* at 254–55.

In determining the factual sufficiency of the evidence, we view "all the evidence in a neutral light, both for and against the finding, and set aside the verdict if 'proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof.'" *Vodochodsky*, 158 S.W.3d at 510. There are

two ways in which evidence may be factually insufficient: (1) if the evidence supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt; or (2) if contrary evidence exists that is strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Zuniga v. State*, 144 S.W.3d 477, 484–85 (Tex.Crim.App.2004). The appellate court is authorized to disagree with the jury's determination, even if probative evidence exists which supports the verdict, but must avoid substituting its judgment for that of the fact-finder. *Vodochodsky*, 158 S.W.3d at 510; *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App.2000) (appellate court's evaluation should not substantially intrude upon the jury's role as the sole judge of the weight and credibility given to witness testimony).

### Analysis

■ Hargrove was charged with intentionally and knowingly possessing more than four ounces but less than five pounds of marihuana. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(3) (Vernon 2003). To prove unlawful possession of a controlled substance, the State must prove that: (1) the defendant exercised control, management, or care over the substance; and (2) the defendant knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005); *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). Hargrove was also charged with unlawful possession of body armor, which required proof that, having been previously convicted of a felony, Hargrove intentionally and knowingly possessed metal or body armor. *See* TEX. PEN.CODE ANN. § 46.041(a),(b) (Vernon 2003) (defining "metal or body armor" to mean "any body covering manifestly designed, made, or adapted for the purpose of protecting a person against gunfire").

■ Control over contraband need not be exclusive, but may be exercised jointly by more than one person. *Cude v. State*, 716 S.W.2d 46, 47 (Tex.Crim.App. 1986); *Puente v. State*, 888 S.W.2d 521, 526 (Tex.App.-San Antonio 1994, no pet.). However, when the defendant is not in exclusive possession of the place where contraband is found, additional independent facts and circumstances must be developed which affirmatively link the defendant to the contraband in order to raise a reasonable inference of the defendant's knowledge and control of the contraband. *Poindexter*, 153 S.W.3d at 406; *Evans v. State*, 185 S.W.3d 30, 34–35 (Tex.App.-San Antonio 2005, pet. granted). The "affirmative links" evidence suffices for proof that the accused possessed the substance knowingly. *Brown*, 911 S.W.2d at 747. The evidence affirmatively linking the accused to the contraband may be direct or circumstantial, but "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06 (quoting *Brown*, 911 S.W.2d at 747, in describing the "affirmative links" rule). "The 'affirmative links rule' is designed to protect the innocent bystander from conviction based solely upon his fortuitous proximity to someone else's drugs." *Id.* It is not sufficient to show the defendant was merely present in the vicinity of the controlled substance. *De La Garza v. State*, 898 S.W.2d 376, 379 (Tex.App.-San Antonio 1995, no pet.).

■ The following is a non-exclusive list of factors that have been found to affirmatively link a defendant to contraband: (1) the defendant's presence when the search was conducted; (2) whether the contraband was in plain view; (3) whether the contraband was in close proximity to, or accessible by, the defendant; (4) whether the place where the contra-

band was found was enclosed; (5) whether the defendant was under the influence of narcotics when arrested; (6) whether the defendant possessed other contraband or narcotics when arrested; (7) whether the defendant made incriminating statements when arrested; (8) whether the defendant attempted to flee; (9) whether the defendant made furtive gestures; (10) whether there was an odor of contraband present at the scene; (11) whether other contraband or drug paraphernalia were present; (12) whether the defendant owned or had a right to possess the place where the contraband was found; (13) whether the defendant was found with a large amount of cash; (14) whether the defendant possessed weapons; and (15) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans,* 185 S.W.3d at 35; *Taylor v. State,* 106 S.W.3d 827, 831 (Tex.App.-Dallas 2003, no pet.) (including possession of weapons as a factor). "The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense." *Evans,* 185 S.W.3d at 35 (quoting *Gilbert v. State,* 874 S.W.2d 290, 298 (Tex.App.-Houston [1st Dist.] 1994, pet. ref'd)).

Hargrove contends the evidence is legally and factually insufficient because it does not affirmatively link him to the marihuana and the body armor. We disagree. While Hargrove was not in exclusive possession of the residence where the marihuana and body armor were found, there was evidence of several additional facts and circumstances that demonstrate his knowledge and control of the two items of contraband. Hargrove was present and alone at the house when the contraband was seized. Although not in plain view, the marihuana and bulletproof vest were easily accessible to Hargrove and were found in an enclosed area to which he had access, *i.e.,* the home. *See Poindexter,* 153 S.W.3d at 409 n. 24 (an "affirmative link" exists when contraband is in plain view or hidden in a place tied to the accused). Prince stated Hargrove had a key and was staying there, and paid some bills and the mortgage, which was in both their names. In addition, the recent utility bill found at the house was addressed to Hargrove at the home address. These factors indicate Hargrove had a right of possession to the place where the contraband was found. *See id.* at 411 (utility bill addressed to defendant, along with his photograph, found inside house supported inference that defendant lived there); *Puente,* 888 S.W.2d at 526 (defendant's name on two bills addressed to house was affirmative link between defendant and contraband inside house).

In addition, drug paraphernalia consisting of the digital scales on the counter, and multiple weapons and ammunition were present at the house, some of which were in plain view. *See Joseph v. State,* 897 S.W.2d 374, 376 (Tex.Crim.App.1995) (presence of drug paraphernalia in home with contraband supported conclusion the defendant knew he possessed cocaine); *Puente,* 888 S.W.2d at 527 (referring to scales as drug paraphernalia); *see also, e.g., Taylor,* 106 S.W.3d at 831 (presence of loaded assault rifle and revolver in plain view with cocaine was affirmative link); *Porter v. State,* 873 S.W.2d 729, 733 (Tex. App.-Dallas 1994, pet. ref'd) (presence of weapons with drugs in apartment was affirmative link). Hargrove's presence alone in the house supports a reasonable inference that he had knowledge of, as well as easy access to, the drugs, bulletproof vest and weapons. Even though Prince stated she purchased the bulletproof vest, she also stated Hargrove knew about the vest and it was used in the business they ran together. Prince was unaware of some of the weapons found in her bedroom, includ-

ing the gun under the pillow. Prince also stated the marihuana was not there when she left the house. In addition, Hargrove attempted to flee out the back door when the officers arrived and gave a false name when first asked, indicating a consciousness of guilt. *See De La Garza*, 898 S.W.2d at 379 (attempt to escape and giving of false name was affirmative link evidence). Finally, Officers Stromboe and Phillips testified they observed activity at the home that in their opinion was consistent with narcotics trafficking. Moreover, the information Stromboe received from an informant that there were drugs and weapons inside the house was confirmed by the search. *See Poindexter*, 153 S.W.3d at 409 (out-of-court statements of confidential informant, which are not objected to as inadmissible hearsay, are entitled to probative value and may be used to establish an affirmative link between the defendant and the contraband).

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence of affirmative links is legally sufficient to support a finding that Hargrove knowingly and intentionally possessed the marihuana and the body armor. *See Vodochodsky*, 158 S.W.3d at 509. Similarly, we conclude that the affirmative links evidence supporting the verdict is not too weak to support a finding beyond a reasonable doubt that Hargrove knowingly and intentionally possessed the marihuana and body armor, nor is it greatly outweighed by the contrary evidence presented by Prince that she purchased the body armor for use in her former business with Hargrove, or that she purchased some of the weapons found at the home. *See Zuniga*, 144 S.W.3d at 484–85; *see also Delbosque v. State*, Nos. 05–04–01500–CR through 05–04–01504–CR, 2006 WL

1102632 at *9 (Tex.App.-Dallas April 27, 2006, no pet. h.) (not designated for publication) (holding affirmative links evidence was sufficient to support convictions for possession of drugs and body armor). Therefore, we hold the affirmative links evidence is factually sufficient to support the jury's verdict. Hargrove's issue challenging the sufficiency of the evidence is overruled.

## EXTRANEOUS OFFENSE EVIDENCE

In his second issue, Hargrove contends the trial court abused its discretion when it admitted the eleven firearms into evidence during the guilt/innocence phase of trial over his Rule 403 objection that the evidence was unduly prejudicial.[3] *See* TEX.R. EVID. 403 (providing that relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice). Hargrove asserts that because he was not indicted for the offense of felon in possession of firearms, admission of the extraneous offense evidence was unfairly prejudicial. The State responds that the probative value of the firearms evidence as a circumstance showing an affirmative link between Hargrove and the bulletproof vest, as well as the marihuana, was not outweighed by the risk of unfair prejudice.

### Standard of Review

We review a trial court's ruling on a Rule 403 objection for an abuse of discretion. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex.Crim.App.2005); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim.App.1990). The language of Rule 403 itself implies that a determination under the rule is inherently discretionary with the trial court, and the trial court is in a superior position to evaluate the impact

---

**3.** Although Hargrove raised other objections at trial to admission of the weapons, on appeal he only asserts error based on his Rule 403 objection.

of the challenged evidence. *Mechler*, 153 S.W.3d at 439; *Powell v. State*, 189 S.W.3d 285, 288 (Tex.Crim.App.2006). As long as the trial court's ruling falls within the zone of reasonable disagreement, we will affirm its decision. *Moses v. State*, 105 S.W.3d 622, 627 (Tex.Crim.App.2003). The trial court's decision must be reasonable in view of all the relevant facts. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App. 1997). If we find an abuse of discretion, we may reverse based on the erroneous admission of evidence only if the error affected the defendant's substantial rights. TEX.R.APP. P. 44.2(b).

### Analysis

■■■■ One ground for exclusion of evidence under Rule 403 is when the probative value of relevant evidence is substantially outweighed by the danger of unfair prejudice. *See* TEX.R. EVID. 403 (also providing for exclusion of relevant evidence on other specific grounds, such as confusion of the issues, misleading the jury, undue delay or presentation of cumulative evidence). Rule 403 does not exclude all prejudicial evidence, only that which is "unfairly" prejudicial. *Mechler*, 153 S.W.3d at 440; *Gigliobianco v. State*, 179 S.W.3d 136, 140 (Tex.App.-San Antonio 2005, pet. granted). All evidence introduced against a defendant which is material to an issue in the case and tends to prove guilt is prejudicial, but is not necessarily unfairly prejudicial under Rule 403. *Manning v. State*, 114 S.W.3d 922, 927–28 (Tex.Crim.App.2003) (citing *Montgomery*, 810 S.W.2d at 378). Evidence is *unfairly* prejudicial in the context of Rule 403 when it has a "tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged." *Mechler*, 153 S.W.3d at 440; *Manning*, 114 S.W.3d at 927–28 ("[e]vidence is prejudicial only when it tends to have some adverse effect ... beyond tending to prove the fact or

issue that justified its admission into evidence ... [t]he prejudicial effect may be created by the tendency of the evidence to prove some adverse fact not properly in issue or unfairly to excite emotions against the defendant ...") (quoting *Montgomery*, 810 S.W.2d at 378).

■■■ In applying the Rule 403 balancing test, a trial court should consider several factors, including: (1) how probative the evidence is, *i.e.*, "how compellingly the evidence serves to make a fact of consequence more or less probable;" (2) the potential of the evidence to impress the jury "in some irrational, but nevertheless indelible way;" (3) the time the proponent needs to develop the evidence, "during which the jury will be distracted from consideration of the indicted offense;" and (4) the proponent's need for the evidence to prove a fact of consequence, *i.e.*, "does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute." *Mechler*, 153 S.W.3d at 440–41; *Manning*, 114 S.W.3d at 926.

■■■ Here, the trial court specifically ruled that the firearms were being admitted under the "affirmative links" rule, *i.e.*, as a circumstance tending to show Hargrove's knowing and intentional possession of the marihuana and the bulletproof vest. The judge further stated that he had conducted the Rule 403 balancing test, indicating that he did not find the probative value of the evidence to be substantially outweighed by the potential for unfair prejudice. After considering all the factors, we conclude the trial court did not abuse its discretion in admitting the firearms evidence. The evidence was both probative and necessary as a circumstance tending to affirmatively link Hargrove to the bulletproof vest and marihuana, thereby helping to make a fact of consequence more

probable—his knowing and intentional possession of those items; further, the trial court stated he was admitting the evidence for the specific purpose of showing an affirmative link. *See Taylor*, 106 S.W.3d at 831 (presence of loaded assault rifle and revolver in plain view with cocaine was affirmative link). Given the number of firearms recovered at the home, we do not find the amount of time used to develop the basic evidence of the type and caliber of the weapons, whether they were loaded or unloaded, and their location inside the home, to be excessive, especially in light of their probative value in providing the factual context in which the charged offenses occurred. While the evidence of the uncharged possession of firearms was clearly prejudicial to Hargrove, it was not *unfairly* prejudicial because it related to the disputed issue of Hargrove's intent to possess the contraband with which he was charged. Finally, although there was other evidence providing affirmative links, the sheer number and range of firearms and ammunition recovered made this evidence highly probative of Hargrove's knowledge and intent to possess the body armor and marihuana. Accordingly, we overrule Hargrove's second issue.

Based on the foregoing reasons, the judgment of the trial court is affirmed.

Dissenting Opinion by REBECCA SIMMONS, Justice.

REBECCA SIMMONS, Justice, dissenting.

I agree with the majority that the evidence in this case was legally and factually sufficient to support the conviction. However, I respectfully dissent from the majority's opinion because I believe that the probative value of the extraneous offense evidence offered by the State is substantially outweighed by the danger of unfair prejudice, and Hargrove was harmed by its admission. Therefore, I would sustain Hargrove's second point of error.

## TEXAS RULE OF EVIDENCE 403

In his second point of error, Hargrove contends that the trial court abused its discretion when it admitted evidence in violation of Texas Rule of Evidence 403 because Hargrove complains that the overwhelming amount of evidence and time spent on the evidence produced a case that was more about the firearms in question than it was about either the marihuana or the bulletproof vest. Specifically, Hargrove objects to Detective Phillips' testimony regarding the firearms seized by the officers at the time of Hargrove's arrest, namely: a loaded .22 Magnum pistol, loaded .45 caliber handgun, loaded Mossberg shotgun, three handguns found in the Appellant's closet, Ruger .40 caliber, remake of a .410 single shot, Kel–Tec .9mm, .22 caliber Remington, and a .12 gauge shotgun.

## RULE 403   BALANCING TEST

In *Montgomery v. State*, 810 S.W.2d 372 (Tex.Crim.App.1991), the Texas Court of Criminal Appeals explained that the "approach under Rule 403 is to admit *all relevant evidence* unless the probative value is *substantially* outweighed by the danger of unfair prejudice to a defendant." *Id.* at 389 (emphasis in original). As the *Montgomery* court explained, the question of prejudice is not solely a function of whether the jury would likely convict a defendant of the wrong offense, but also a question of whether the evidence "distracts the jury from the 'specifically charged offense.'" *Id.* Unlike the majority, I would hold that a balancing under Rule 403 reveals that the firearms seized at Hargrove's residence, provided little, if any, probative value with respect to any ele-

ment of the charged offenses; yet they created a great risk of unfair prejudice to Hargrove. *See Moreno v. State,* 22 S.W.3d 482, 489 (Tex.Crim.App.1999) (stating the relevance value of the evidence was "vanishingly low" while the danger of "misleading the jury and being used for unfair prejudice was much higher").

## A. Making a Fact of Consequence More or Less Probable

Although the State is generally entitled to show the circumstances surrounding an arrest, the evidence is nevertheless subject to the balancing test set out in Tex.R. Evid. 403. *See Couret v. State,* 792 S.W.2d 106, 107 (Tex.Crim.App.1990). In *Couret,* the accused was arrested during the commission of a burglary of a building. The court explained that any extraneous matters which: (1) occurred during this arrest, (2) were relevant to place the offense in a proper setting and (3) were offered to show the jury the whole transaction would be admissible in order to show the context of the offense. *Id.* at 108. For example, the court stated, simple possession of a hypodermic needle, however, does not meet this test absent evidence that appellant committed the burglary to obtain money or property to support a drug habit. *Id.* The court concluded:

> Despite the broad language in *Maddox,* the mere fact that possession of the hypodermic needle was contemporaneous with the arrest does not permit admission. Since there is nothing to show any relevance to the context of the offense or to any other issue in the case, the evidence of appellant's possession of the hypodermic needle should not have been admitted.

*Id; Cf. Maddox v. State,* 682 S.W.2d 563, 564 (Tex.Crim.App.1985) (rifle seized from floorboard of the pickup truck during drug purchase was admissible because it "was shown to have been directly connected with, and contemporaneous to, and inseparable from the arrest of the appellant"). In *Alexander v. State,* 88 S.W.3d 772, 778 (Tex.App.-Corpus Christi 2002, pet. ref'd), the officers seized a .357 Magnum at the residence where a murder suspect was arrested. Considering Rule 403, the *Alexander* court concluded that the seizure of the .357 magnum had no probative value with respect to any fact of consequence and the danger of unfair prejudice was great. *Id.*

With respect to the first factor, I disagree that the firearms serve to make a fact of consequence of the charged crimes more or less probable. *See Mechler v. State,* 153 S.W.3d 435, 440–41 (Tex.Crim. App.2005). Just like in *Alexander* and *Couret,* the firearms had nothing to do with any fact of consequence, but simply provided evidence that police seized eleven firearms somewhere in the residence, where Hargrove was arrested. The State did not present evidence that Hargrove had committed an extraneous offense, did not charge him with any crimes associated with the firearms, but simply offered testimony that the weapons were seized at the residence when he was arrested.

The majority holds that the evidence was probative and necessary as a circumstance tending to affirmatively link Hargrove to the bulletproof vest and the marihuana. Yet, in its brief, the State *only* argues the weapons are an affirmative link to the marihuana. The underlying fact of consequence is possession of the marihuana. Moreover, at trial, the State argued, without any evidence or testimony to substantiate the argument, that Hargrove had the firearms to protect his marihuana or as payment for the marihuana—to prove possession of the marihuana.

I believe the evidence is insufficient to support this inference. There were no questions posed to the officers and no evi-

dence presented supporting the proposition that the firearms were used to protect the marihuana or that they may have been traded as payment for the marihuana. The marijuana was retrieved from the utility room of the residence and all of the firearms were collected from the master bedroom—the bedroom of Hargrove's ex-girlfriend, Robin Prince, and a room in which Hargrove was no longer sleeping. When, as in this case, there are multiple conclusions that might be drawn from the same piece of evidence, the evidence does not directly establish possession of the marihuana and therefore the assigned probative value or utility of the evidence, if any, is weak. *See Montgomery*, 810 S.W.2d at 397 (holding, although relevant, evidence in question had only marginal probative value).

**B. Potential to impress the jury**

As to the second factor, the admission of all eleven firearms clearly had the potential to impress the jury in an irrational but nevertheless indelible way. *See Mechler*, 153 S.W.3d at 440–41. In *Cunningham v. State*, 500 S.W.2d 820, 824 (Tex.Crim.App. 1973), the defendant was charged with robbery. During its case-in-chief, the State offered a sawed-off shotgun that was recovered from the trunk of the defendant's vehicle. The Court of Criminal Appeals looked to the testimony of both complaining witnesses that no shotgun was ever exhibited during the course of the robbery. *Id.* The court concluded that "the presence of the weapon *continuously before the jury* would only inflame their minds and encourage juror speculation and conjecture as to its use . . . or events of ill good." *Id.* (emphasis added); *see also Alexander*, 88 S.W.3d at 778 (the firearm seized pursuant

to arrest had the potential to impress the jury in an irrational manner).

Just like in *Cunningham*, the record is void of any evidence that the firearms in question were ever used during the commission of any offense, much less the charged offense of possession of marihuana and possession of body armor. Further, because of the manner in which the State offered the firearms, the presence of the weapons throughout the trial only helped to inflame the juror's minds and encourage speculation and conjecture as to their use. Therefore, I would conclude that there is a significant risk that the admission of eleven weapons impressed the jury in an irrational but nevertheless indelible way.

**C. Time needed to develop evidence**

*Mechler's* third concern, the time needed by the State to develop the firearm evidence, also raises serious concern. *Mechler*, 153 S.W.3d at 440–41. The final witness called by the State, Officer Phillips, was the State's primary witness. He tagged and collected all of the evidence seized at the residence. Officer Phillips' direct testimony consisted of approximately fifty-three pages, the break down of which is important: fourteen pages were devoted to the officer's background and training; nine pages were devoted to the marihuana; two pages to the scales; seven pages to the vest; three pages to other affirmative links, including the CPS bill, clothes, etc.; and over *twenty-four* pages to the firearms in question.[1] In all, *24 out of 53 pages* were devoted solely to the discussion of the uncharged firearms and *11 out of the State's 17 exhibits* were the firearms in question. The State spent a significant amount of time eliciting testimony regarding the firearms, during

1. This testimony included five pages on ammunition seized pursuant to the arrest. Although not admitted into evidence, the officer linked the ammunition to the firearms in question.

which time the jury was distracted from considering the offenses for which Hargrove was *actually indicted.* Cf. *Alexander,* 88 S.W.3d at 778 (holding that, although the State did not spend a great deal of time proving up the seizure of the weapon, the factors weighed against admission).

### D. Need for the Evidence

And finally, with respect to the fourth factor, the State's need for this evidence, to prove the connection between the contraband and the defendant, was minimal at best. *Mechler,* 153 S.W.3d at 440–41. In certain cases, this type of evidence may be the only evidence to link a defendant with the particular substance or object. That is not the case here. Notably, all of the evidence establishing the necessary affirmative links came on before the admission of the weapons. As such, at the time of Philips' testimony, the State had more than some evidence to establish a connection between the accused and the contraband. Further, as I discussed above, the evidence does not substantiate the State's alleged utility for the weapons.

At best, the weapons had a marginal probative value to make a fact of consequence more probable and there was a significant risk Hargrove was convicted solely on the fact that he was in possession of these eleven weapons. Consequently, I would hold that under a Rule 403 balancing test the trial court could only have concluded that the probative value of these weapons was substantially outweighed by the danger of unfair prejudice. As such, I would further hold that the trial court abused its discretion.

### HARM ANALYSIS

Having concluded that the trial court erred in admitting the firearms into evidence, a determination whether the admission was so harmful as to require reversal

is necessitated. TEX.R.APP. P. 44.2; *see Garza v. State,* 963 S.W.2d 926, 930 (Tex. App.-San Antonio 1998, no pet.). Introduction of extraneous offense evidence is inherently prejudicial and harmful to the defendant because it requires that the defendant "defend against not only the offense charged, but also his uncharged actions." *Carter v. State,* 145 S.W.3d 702, 710 (Tex.App.-Dallas 2004, pet. ref'd). Adding to the prejudicial effect of extraneous offense evidence is the jury's natural tendency to infer guilt of the charged offenses from the noncharged, extraneous offenses. *Id.* Among other things, the reviewing court may consider the jury instructions, the State and defense theories and the closing arguments. *Morales v. State,* 32 S.W.3d 862, 867 (Tex.Crim.App. 2000).

During Hargrove's closing argument, his attorney reiterated the insignificance of the firearms in light of the fact that Hargrove had not been charged with any crime involving the firearms. In response, the prosecutor stated:

> [n]ow, the defense attorney is saying, well he's not charged with the weapons. You don't know that. It's not in evidence. He could be charged [with] weapons ... [h]e could be charged with weapons and you don't know about it and he may not be charged with weapons and you don't know about it.

Hargrove's objection regarding this jury argument was overruled.

Considering the statements made by the prosecutor, as well as the fact that this case, although legally and factually sufficient to sustain a conviction, was a circumstantial evidence case, it is reasonable to conclude that the jury could have held either way. Thus, I cannot conclude that, with the amount of evidence regarding the firearms presented at trial, Hargrove was

prosecuted for the offenses with which he was charged, and not an offense for which he was neither charged nor for which he had an opportunity to defend against. As such, I would hold that there is a reasonable likelihood that the nature and extent of the improperly admitted evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *See* TEX.R.APP. P. 44.2.

## CONCLUSION

Because the trial court abused its discretion with the admission of the firearms, and I am unable to conclude that the error did not contribute to Hargrove's conviction or punishment, I would reverse the judgment of the trial court and remand the cause for a new trial.