

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-09-00177-CR

_____

KERMIT LUCAS, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 35610-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Justice Moseley

MEMORANDUM OPINION

Kermit Lucas, Jr., was placed on community supervision for a period of seven years in June 2007 after having been sentenced to ten years' imprisonment for failure to register as a sex offender.[1] In September 2009, the trial court revoked Lucas's community supervision, finding Lucas violated its terms when found in possession of marihuana and cocaine.[2] Lucas appeals the judgment revoking community supervision, claiming the evidence was factually insufficient to support revocation. Because there was sufficient evidence upon which the trier of fact could conclude that the State proved by a preponderance of the evidence that Lucas intentionally and knowingly possessed marihuana and cocaine, we affirm the judgment of the trial court.

I.    BACKGROUND

Officer Brandon Burns of the Kilgore Police Department called for backup when he initiated a traffic stop of a vehicle operated by Dekeimus Derrell Jones for failure to stop at a designated stop sign.[3] As Burns approached the vehicle, the driver put the car in reverse, which alarmed Burns. Burns also noticed the passenger—Lucas—moving quite a lot. Jones gave

---

[1]*See* TEX. CODE CRIM. PROC. ANN. art. 62.102(b)(2) (Vernon 2006).

[2]At the conclusion of the hearing, the trial court found allegations one through four of the State's amended motion to revoke community supervision to be true. The trial court did not find allegation number five to be true. That allegation reads:

> 5. That the defendant, Kermit W. Lucas, has violated condition (3) of his probation by failing to avoid persons or places of disreputable or harmful character or being present where a criminal offense is being committed.

[3]The vehicle, which was not registered to either Jones or Lucas, also had an expired registration, although Jones had said he purchased the vehicle.

2

Burns consent to search the vehicle, whereupon Burns located a small white rock inside a plastic bag in the center between the driver's seat and the front passenger's seat on the floorboard in a cup holder. Burns believed the rock to be cocaine, and it later tested positive as such. The cocaine was not concealed and was within reach of both Jones and Lucas. Burns believed the cocaine to be in the care, custody, and control of Lucas.

Officer Josh Sims, also of the Kilgore Police Department, responded to the call for backup. As Sims searched the passenger's side of the vehicle, he discovered a baggie of marihuana in a hole in the passenger's side door. The hole was large enough to easily reach into, and looked as if it had once held a car stereo speaker. Sims was able to easily view the space containing the baggie of marihuana during his search. While the marihuana was easily within reach of Lucas from the passenger's seat, Sims could not affirmatively testify that Lucas was aware of the presence of marihuana.[4]

At the time of his arrest, Lucas had only known Jones for approximately three weeks—the two having met when Jones moved into the house that Lucas and his brother shared.[5] Prior to the traffic stop resulting in Lucas's arrest, he and Jones had left the house to get something to eat. They were returning home when the traffic stop was initiated. Lucas stated that he was unaware that marihuana was located in the passenger's door, and he did not see the cocaine in the cup holder on the floor between the two front seats.

---

[4]Neither Jones nor Lucas ever admitted to ownership of the cocaine and marihuana.

[5]Lucas lives with his brother and his brother's girlfriend. Jones is the son of Lucas's brother's girlfriend.

When questioned about the furtive movements described by Burns, Lucas stated that he was nervous and fidgety because he was on community supervision and there was a chance he would go to jail. He later stated, however, that while he did not then believe he would go to jail, he just did not like to be stopped by law enforcement officers. Lucas testified that when the narcotics were located during the search, he implored Jones to confess to his possession of them, but no such confession was ever given.[6]

Lucas testified that at the time of his arrest, he had been on community supervision for over two years, and this was his first violation. Reporting, fees, and community service were all up to date. This was verified by Lucas's community supervision officer, Rex Fennell. Lucas further stated that he has a son who had trouble with drugs, and for that reason, he hates drugs and wants nothing to do with them.

## II.     ANALYSIS

### A.     Standard of Review

In a revocation hearing, the State must prove by a preponderance of the evidence that a defendant violated the terms of his community supervision. *Moreno v. State*, 22 S.W.3d 482, 488 (Tex. Crim. App. 1999) (en banc); *Armstrong v. State*, 82 S.W.3d 444, 448 (Tex. App.—Austin 2002, pet. ref'd). If the State meets its burden of proof, it is within the trial court's discretion to revoke community supervision. *Cardona v. State,* 665 S.W.2d 492, 493 (Tex. Crim. App. 1984).

---

[6]Lucas maintained that he did not know anything about Jones.

Said another way, the trial court's discretion is not absolute; the State must prove every element of at least one ground for revocation by a preponderance of the evidence. *In re T.R.S.*, 115 S.W.3d 318, 320 (Tex. App.—Texarkana 2003, no pet.). This standard is satisfied when the greater weight of the credible evidence creates a reasonable belief that the defendant violated a condition of community supervision. *Allbright v. State*, 13 S.W.3d 817, 819 (Tex. App.—Fort Worth 2000, pet. ref'd). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and the evidence should be reviewed in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Cherry v. State*, 215 S.W.3d 917, 919 (Tex. App.—Fort Worth 2007, pet. ref'd).

## B. The Evidence Was Factually Sufficient to Support Revocation

Each finding in support of the trial court's decision to revoke community supervision centers either upon Lucas's possession of cocaine or of marihuana.[7] The essential elements of

---

[7]These findings are:

1. That the defendant, Kermit W. Lucas, has violated condition (1) of his probation in that on or about July 21, 2009, in Gregg County, Texas, the defendant did then and there possess a controlled substance listed in penalty group 1 of the Texas Controlled Substances Act, namely cocaine, in an amount of one gram or less.

2. That the defendant, Kermit W. Lucas, has violated condition (1) of his probation in that on or about July 21, 2009, in Gregg County, Texas, the defendant did then and there possess a usable quantity of marihuana in an amount of two ounces or less.

3. That the defendant, Kermit W. Lucas, has violated condition (2) of his probation in that on or about July 21, 2009, in Gregg County, Texas, the defendant did then and there possess a controlled substance, to-wit: cocaine.

4. That the defendant, Kermit W. Lucas, has violated condition (2) of his probation in that

possession of a controlled substance are: (1) the defendant exercised actual care, control, and management over the contraband; and (2) the defendant knew the substance in his possession was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *Murphy v. State*, 200 S.W.3d 753, 761 (Tex. App.—Texarkana 2006), *aff'd*, 239 S.W.3d 791 (Tex. Crim. App. 2007); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(f) (Vernon Supp. 2009). "Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (Vernon Supp. 2009).

Where, as here, an accused is not in exclusive possession of the place where contraband is found, additional independent facts and circumstances must be developed which affirmatively link the defendant to the contraband in order to raise a reasonable inference of the defendant's knowledge and control of the contraband. *Poindexter*, 153 S.W.3d at 406. This affirmative links rule is designed to protect an innocent bystander from conviction merely because of fortuitous proximity to someone else's drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). While mere presence in the vicinity of a controlled substance is insufficient to show possession, presence or proximity, when combined with other direct or circumstantial evidence, may well be sufficient to establish possession by a preponderance of the evidence. *See id*. (direct or circumstantial evidence may be sufficient to establish possession beyond a reasonable doubt). The evidence affirmatively linking the accused to the contraband "must establish, to the requisite

on or about July 21, 2009, in Gregg County, Texas, the defendant did then and there possess a controlled substance, to-wit: marijuana.

6

level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 405–06.

The following is a nonexclusive list of factors that have been found to be sufficient, either singly or in combination, to establish a person's possession of contraband: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) whether the contraband was in close proximity to, or accessible by, the defendant; (4) whether the place where the contraband was found was enclosed; (5) whether the defendant was under the influence of narcotics when arrested; (6) whether the defendant possessed other contraband or narcotics when arrested; (7) whether the defendant made incriminating statements when arrested; (8) whether the defendant attempted to flee; (9) whether the defendant made furtive gestures; (10) whether there was an odor of contraband present at the scene; (11) whether other contraband or drug paraphernalia were present; (12) whether the defendant owned or had a right to possess the place where the contraband was found; (13) whether the defendant was found with a large amount of cash; (14) whether the defendant possessed weapons; and (15) whether conduct of the defendant indicated a consciousness of guilt. *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd).

Lucas contends the evidence is factually insufficient because it does not affirmatively link him to the marihuana or the cocaine. We disagree. While Lucas was not in exclusive possession of the vehicle where the marihuana and cocaine were found and the vehicle did not belong to him,

7

there was evidence of several additional factors and circumstances that could be used to demonstrate his awareness of and control of the two items of contraband. Lucas had been present in the vehicle when the traffic stop occurred and the search was conducted. The marble-sized rock of cocaine was in plain view in a cup holder on the floorboard between the driver's and passenger's seats and it was easily accessible to Lucas. The marihuana was found on the side of the car where Lucas had been riding; although it was in a hole in the door, there was testimony that it was within his sight and within his easy reach. Further, when Burns initiated the stop, he saw Lucas making furtive gestures, causing Burns to then suspect that Lucas may have been attempting to conceal something.[8] In addition, Lucas testified that he was nervous when the traffic stop was initiated, believing there was a chance that he would go to jail. Although Lucas later altered this testimony somewhat, such a statement could evidence a consciousness of guilt. Each of these factors creates an affirmative link tying Lucas to the cocaine and marihuana. The number of factors or links present is not as important as the logical force those factors have in establishing the elements of the offense. *Hargrove*, 211 S.W.3d at 386.

We are mindful that Lucas indicated a strong dislike for drugs, did not own the vehicle in question, and adamantly denied any knowledge of the presence of cocaine and marihuana within its confines.

---

[8]"Furtive" gestures are generally defined as those which are surreptitious, underhanded, or done by stealth. *Lopez v. State*, 267 S.W.3d 85, 94 n.26 (Tex. App.—Corpus Christi 2008, no pet.) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 474 (10th ed. 1993)).

Cases with similar evidence wherein the reviewing court found insufficient evidence to sustain a finding by a preponderance of the evidence after a hearing on revocation are not abundant. We find some similarity in the facts here to those in *Wiersing v. State*, 571 S.W.2d 188 (Tex. Crim. App. [Panel Op.] 1978). In it, Wiersing was a passenger in a vehicle in which illicit drugs were found after a traffic stop. The drugs were found on Wiersing's side of the automobile and within his easy reach. The distinction lies in the fact that in *Wiersing*, the driver of the vehicle admitted to the ownership of the drugs and maintained that Wiersing had no knowledge of them. Here, although Lucas asked Jones, the owner of the car and its sole other occupant, to make similar statements regarding Lucas's lack of connection to the drugs, no such exculpatory statements were made on his behalf.

The trial court remains the sole judge of the witnesses' credibility, and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). Viewing the evidence in the light most favorable to the judgment of the trial court, we determine under that standard that the trier of fact could have concluded that the greater weight of the credible evidence created a reasonable belief in him that Lucas violated a condition of community supervision. *See Allbright*, 13 S.W.3d at 819. Accordingly, the trial court was within its discretion to so find.

As entered, the judgment revoking community supervision finds all of the allegations in the motion to revoke to be true. In so stating, the written judgment does not comport with the

9

judgment pronounced by the court because the trial court specifically omitted a finding of "true" as to allegation number five of the motion (i.e., that Lucas had failed to avoid persons or places of disreputable or harmful character or was present where a criminal offense was being committed). This Court has the authority to modify the judgment to make the record speak the truth when the matter has been called to our attention by any source. *French v. State*, 830 S.W.2d 607 (Tex. Crim. App. 1992). In *Asberry v. State*, 813 S.W.2d 526 (Tex. App.—Dallas 1991, pet. ref'd), the court noted that the authority of the appellate court to modify incorrect judgments is not dependent on request of any party; the appellate court may act sua sponte. The Texas Rules of Appellate Procedure provide direct authority for this Court to modify the judgment of the trial court. TEX. R. APP. P. 43.2. We modify the judgment to omit the finding of "true" to allegation number five.

As modified, we affirm the judgment of the trial court.


Bailey C. Moseley
Justice


Date Submitted:      May 13, 2010
Date Decided:        May 14, 2010

Do Not Publish