

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-15-00161-CR

_____


SHANNEY VELWOOD, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 424th District Court
Burnet County, Texas
Trial Court No. 42474



Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

After having been convicted by a jury of the offense of possession of four grams or more but less than 200 grams of methamphetamine,[1] Shanney Velwood was sentenced to eleven years' incarceration. Because we find that the evidence is legally sufficient to support Velwood's conviction, we affirm the trial court's judgment.

## I. Background

Joey Van Gundy, a trooper with the Texas Department of Public Safety (DPS), was on routine patrol in Marble Falls[2] on January 18, 2014, when he noticed a black Mercedes approaching the Bluebonnet Café. Van Gundy stopped the Mercedes after a registration check revealed that the vehicle bore a license plate registered to a different vehicle—a 1982 Saab—and that the Saab's registration had expired in 1992. The driver identified himself as Pete Pattison, and Velwood was the sole passenger. When informed of the reason for the stop, Pattison explained that he had recently purchased the vehicle, but that he had new license tags for it. Velwood told Van Gundy that the vehicle was insured with State Farm.

When Van Gundy asked Velwood to exit the vehicle in order to speak with him, he noticed that Velwood was holding a cup that had earlier been sitting on the console. As Velwood stepped out of the car, she laid her jacket in the passenger seat, looked down, and pulled the jacket over the edge of the seat. Van Gundy was concerned about these apparently "awkward[]" actions and

---

[1]*See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d) (West 2010).

[2]Originally appealed to the Third Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to Section 73.001 of the Texas Government Code. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2013). We are unaware of any conflict between precedent of the Third Court of Appeals and that of this Court on any relevant issue. *See* TEX. R. APP. P. 41.3.

asked Velwood if she was okay. He believed that Velwood was obviously trying to conceal something from him and found it odd that she did not wear her jacket even though it was cold outside.

In response to Van Gundy's questioning, Velwood told him that, although she did not use methamphetamines, Pattison used that drug. Believing that Pattison and Velwood were being dishonest, Van Gundy asked Pattison for consent to search the vehicle, which was denied. As Van Gundy was awaiting the arrival of a canine unit to conduct a free-air search of the car, he spotted a large amount of a white powdery substance in the seams of the driver's seat, which he believed to be methamphetamine residue, together with four pieces of what he believed to be crystal methamphetamine. A field test on the white powdery substance indicated that it was methamphetamine.

A search of the vehicle revealed the presence of a methamphetamine pipe between the driver's seat and the center console and a small metal canister which appeared to contain methamphetamine residue in the center console. Found lying under Velwood's jacket in the passenger seat was an empty white plastic container and some loose pills. Velwood claimed ownership of the container and indicated that the pills were Vicodin, for which she claimed to have a prescription. Van Gundy observed a small amount of a white, clear, crystalline, powdery substance at the bottom of the white container which, based on his training and experience, he believed to be methamphetamine residue.[3] Van Gundy also located a marihuana pipe in the pocket

---

[3]The residue was not tested to determine if it was, in fact, methamphetamine. Henry Amen, a forensic scientist with the DPS crime laboratory in Austin, testified that he could not identify the residue inside either the white plastic container or the metal canister on sight as methamphetamine. He further testified that it would not be reasonable to

of Velwood's jacket, which had been laid across the passenger seat, as well as marihuana residue inside of her bags. Additionally, Van Gundy located a spoon that was burned on the bottom, together with a torch lighter in a compartment located to the left of the radio, close to the passenger seat. Van Gundy believed that the spoon was drug paraphernalia.

Finally, Van Gundy discovered a large amount of methamphetamine spilled across the floorboard mat behind the driver's seat underneath a pair of folded overalls. On closer inspection, it was apparent to Van Gundy that a brownish-colored liquid that appeared to be the same liquid that was in the cup located in the center console had been spilled on the methamphetamine. Van Gundy testified that three quarters of the floor mat was covered in this liquid and that the methamphetamine was saturated with liquid. He further stated that the cup holding the liquid was, at that point, almost empty. Velwood was the only person Van Gundy observed handling the cup. Velwood and Pattison were arrested for possession of methamphetamine. While incarcerated, Pattison told Ginnie Kirkpatrick, a Burnet County jailer, that the methamphetamine found in the Mercedes belonged to him, not Velwood. Pattison recanted this statement when he later spoke with Van Gundy. Velwood denied ownership of the methamphetamine, but stated that it came from the Austin area.

## II.    Standard of Review

In evaluating legal sufficiency, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential

---

conclude that the residue inside of each of these respective containers was methamphetamine based on observation alone.

4

elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*. at 240.

III.    **Legally Sufficient Evidence Supports the Conviction**

Velwood contends that the evidence was insufficient to prove the offense of possession of methamphetamine. To prove Velwood guilty of the indicted offense, the State was required to prove that Velwood (1) intentionally or knowingly (2) possessed (3) the controlled substance methamphetamine (4) in an amount of four grams or more, but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(d).    To show that Velwood possessed the

5

methamphetamine, the State was required to prove that she "exercised control, management, or care over the substance" and knew "the matter possessed was contraband." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2015) (defining possession as "actual care, custody, control, or management"); *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Mere presence at a location where drugs are found is not sufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). Although possession may be proven by direct or circumstantial evidence, that evidence "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Poindexter*, 153 S.W.3d at 406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Where, as here, "the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Id*. (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)).

Some factors that may be legally sufficient, either alone or in combination, to circumstantially establish an accused's knowing possession of a controlled substance include:

> (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the narcotic; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the defendant was

6

found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt.

*Evans*, 202 S.W.3d at 162 n.12; *see also Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.— San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.— Texarkana 2006, pet. ref'd).  The number of links is not dispositive.  Rather, we look to "the logical force of all of the evidence, direct and circumstantial."  *Evans*, 202 S.W.3d at 162.

While Velwood was not in exclusive possession of the vehicle where the methamphetamine was found, several additional facts and circumstances demonstrate her knowledge of and control over the methamphetamine.  First, although Pattison owned the vehicle, Velwood readily supplied insurance information on the vehicle.  Velwood was present in the vehicle when the search was conducted, at which time the methamphetamine was hidden under a pair of overalls behind the driver's seat, but within her reach, as Velwood's seat was reclined when the vehicle was stopped.

Further, as Velwood was exiting the passenger side of the vehicle, she appeared to be attempting to conceal something when she laid her jacket over the seat.  This could be described as a "furtive gesture" on Velwood's part.[4]  Vicodin and a pill container were found under the jacket, and a pipe used for smoking marihuana was located in Velwood's jacket pocket.  In addition, a pipe used for smoking methamphetamine was discovered between the driver's seat and the center console, and a small metal canister was discovered in the center console, all within

---

[4]Furtive gestures are generally defined as those which are surreptitious, underhanded, or done by stealth.  *Lopez v. State*, 267 S.W.3d 85 (Tex. App.—Corpus Christi 2008, no pet.) (citing WEBSTER'S COLLEGIATE DICTIONARY 474 (10th ed., Merriam-Webster, Inc. 1993)).

Velwood's reach. A torch lighter and a spoon with burn marks—described by Van Gundy as drug paraphernalia—were also located in a compartment close to the passenger seat.

Although Velwood denied ownership of the methamphetamine, she knew it came from the Austin area. The plain implication of this statement is that Velwood knew the methamphetamine was in the vehicle. Finally, liquid was spilled on the methamphetamine, in an apparent attempt to dissolve the drugs. Velwood was seen holding a cup with ice and liquid, and after the wet methamphetamine was discovered, the cup Velwood was previously holding contained only a small amount of liquid.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Velwood exercised care, custody, control, or management over the methamphetamine and that she knew the substance was contraband.

We affirm the trial court's judgment.

Ralph K. Burgess
Justice

Date Submitted:     April 7, 2016
Date Decided:       July 7, 2016

Do Not Publish

8