COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| LAFONDA GRAY, | § | No. 08-11-00003-CR |
| Appellant, | § | Appeal from |
| v. | § | 120th District Court |
| THE STATE OF TEXAS, | § | of EL Paso County, Texas |
| Appellee. | § | (TC # 20100D01838) |

## **O P I N I O N**

Lafonda Gray appeals his conviction of possession of less than one gram of cocaine. A jury found Appellant guilty and the trial court assessed his punishment at confinement in the state jail for twenty-four months. We affirm.

### **FACTUAL SUMMARY**

In the early part of 2010, Detective Lynn Picard received an anonymous Crime Stoppers tip that drugs were being sold out of 11009 Rockdale in El Paso. Picard conducted surveillance of the residence in February and March of 2010 in an effort to verify the tip but she was unsuccessful. Consequently, she began doing trash pick-ups at the residence in an effort to search for drug residue or paraphernalia. On March 10, 2010, Picard and Detective Sergio Lopez went to Appellant's residence early in the morning prior to curb-side trash pick-up and removed the trash bags from the bin. Picard and Lopez found mail addressed to Appellant, a couple of sandwich baggies with cut corners, and marihuana stems. Baggies with the cut corners are used in packaging of street level narcotics. She also found cocaine residue on one of the cut corners. Picard picked up the trash again two weeks later and found additional baggies with cut corners,

marihuana stems and seeds, and marihuana "roaches." She tested one of the cut corners and found cocaine residue. Picard also found FoodSaver bags which are used to package marihuana. Approximately two weeks later, Picard picked up the trash again and found marihuana stems and seeds, cut corners from baggies, and a Ziploc bag that tested positive for cocaine. She also found a document bearing Appellant's name.

Based on the information she had gathered, Picard obtained a search warrant for Appellant's residence. Picard and Lopez were assisted by the SWAT Team when they executed the search warrant at 5:20 a.m. on April 16, 2010. The SWAT Team entered first and secured Appellant, Demarko Gray, and Kenneth Berry. When Lopez saw Appellant seated outside by the front door of the residence, Lopez asked who owned the house so he could give him the search warrant. Appellant told Lopez that it was his house and his bedroom was in the northwest corner of the house. In the kitchen, Picard found marihuana, a spoon with white residue on it which tested positive for cocaine, and a large scale. She also found a small digital scale in a drawer along with small Ziploc baggies and a bill from CitiCard addressed to Appellant. Picard testified that the small baggies are commonly used to package drugs for sale. In another drawer, the officers found a gun. Picard explained that the larger scales are typically used when packaging larger quantities of drugs like marihuana because they are measured in pounds. The smaller digital scales are used in the packaging of smaller quantities of drugs. In the living room, the officers found marihuana roaches and stems, and a Taser. In the dining room, one of the officers found a water bill for the residence in Appellant's name as well as a Bank of America statement. The officers also searched the bedrooms. In the northwest bedroom, the officers found an expired driver's license and another document bearing Appellant's name. They searched the dresser in that bedroom and found a large sum of cash. They also found a lockbox

which contained more cash and a Texas identification card belonging to Appellant. The officers found $5,255 in Appellant's bedroom. The police found an additional $2,475 hidden inside of a shoe in the bedroom used by Demarko. Demarko denied ownership of the money but Appellant claimed that it was his money. When asked whether he was employed, Appellant told the officers that he worked for Triple A Construction and for a mechanic's shop, but he could not provide the officers with any information or telephone numbers to verify his employment. Sgt. Barry Alvarez asked Appellant why he had so many $100 bills in the lockbox and he said it was because he knew the police would be looking for $20 bills and would be less likely to seize the money as the proceeds of drug trafficking so he exchanged the $20 bills for $100 bills. Sgt. Alvarez testified that cocaine is sold to street level users in $20 bindles. The white powdery substance found on the spoon was submitted to the El Paso Police Department Crime Lab for testing. The first analyst determined that the substance was cocaine and it weighed .04 grams. The second analyst likewise determined that it was cocaine but it weighed .03 grams because a portion of the substance had been used in the prior testing.

Appellant's older brother, Demarko Gray, testified for the defense. He lives with his grandmother but he has some clothes and other items at Appellant's house. Demarko admitted that the gun found in the kitchen was his. He put it in the kitchen drawer when he heard the police announce that they were entering the house. Appellant keeps Demarko's pit bulls at the house because their grandmother did not want the dogs in her yard because she has a garden. Demarko sells the pit bull puppies for $500 to $600 each and he shares part of the money with Appellant. On cross-examination, Demarko admitted that he had only sold one litter of puppies and he had not sold any from the second litter because they were only five weeks old. Demarko explained that he used the large scale to weigh the puppies. Demarko and Appellant also have a

pressure washing business and they make $400 to $500 per week. On cross-examination, Demarko testified that they charge $10 per car and usually wash ten to twenty cars at the flea market on Fridays and Saturdays. They have a keyboard and recording equipment and sometimes charge other people to use the equipment. He estimated they made approximately $1,000 per month with this business. Demarko and Appellant also purchase clothes wholesale from China and sell them out of the house. Demarko admitted that he and Kenneth Berry had smoked marihuana the night before the police entered the house, but he denied using cocaine. Demarko was charged with possession of marihuana and cocaine. The cocaine charge was dismissed and he entered a plea of guilty to possession of marihuana.

Kenneth Berry testified that he and Ronald Turner went to visit Demarko at Appellant's house. He took some "chronic" or high-grade marihuana to the house and he smoked it with Ronald and Demarko. They played games on the Xbox for a while and Ronald left. Berry also took seven grams of cocaine he had purchased earlier that day for $200, a spoon, and a small scale to the house. After Demarko fell asleep, Berry started using the cocaine by placing it in the spoon and snorting it. He used all of the cocaine by himself.

Detective Lopez testified on rebuttal that a street level user typically buys a "20" or .3 to .5 grams of cocaine for $20. For $200, a person can purchase what is referred to as "a seven" or about seven grams of cocaine. That large an amount is usually purchased by a dealer, not a street level user. He had never known anyone to use seven grams of cocaine in a twelve hour period by himself. Further, people typically snorted cocaine from little vials or the corners of baggies and he had never heard of a person snorting it from a measuring spoon like Berry had claimed he had done. A measuring spoon is more typically used to mix and measure cocaine for

- 4 -

distribution. During the investigation after the search, Demarko did not claim that the marihuana was his. Likewise, Berry did not tell the officers that the cocaine was his.

The jury rejected Appellant's defense and found him guilty of possessing less than one gram of cocaine as charged in the indictment. He raises three points of error on appeal.

## LEGAL SUFFICIENCY

In his first point of error, Appellant challenges the legal and factual sufficiency of the evidence to support his conviction. In 2010, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)). The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks*, 323 S.W.3d at 894-95. Therefore, in accordance with *Brooks*, we review Appellant's legal and factual sufficiency claims together under the *Jackson* legal-sufficiency standard and determine whether the evidence is sufficient to support the challenged elements of the criminal offense beyond a reasonable doubt. *See Brooks*, 323 S.W.3d 894-95, *citing Jackson*, 443 U .S. at 319, 99 S.Ct. 2789.

### *Standard of Review and Applicable Law*

Under the *Jackson* standard, a reviewing court must consider all evidence in the light most favorable to the verdict and in doing so determine whether a rational justification exists for the jury's finding of guilt beyond a reasonable doubt. *Brooks*, 323 S.W.3d at 894-95, *citing*

*Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). This standard applies equally to both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).

A person commits an offense if he knowingly or intentionally possesses a controlled substance in penalty group 1. TEX.HEALTH & SAFETY CODE ANN. § 481.115(a)(West 2010). Cocaine is a controlled substance in penalty group 1. TEX.HEALTH & SAFETY CODE ANN. 481.102(3)(D). The Penal Code defines "possession" as actual care, custody, control, or management. TEX.PENAL CODE ANN. § 1.07(a)(39)(West Supp. 2011). To prove unlawful possession of a controlled substance, the State must prove that (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex.Crim.App. 2005). Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex.Crim.App. 2006). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband. *Poindexter*, 153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) the defendant's presence when a search is conducted, (2) whether the contraband was in plain view, (3) the defendant's proximity to and the accessibility of the contraband, (4) whether he was under the influence of a controlled substance or narcotic when arrested, (5) whether he possessed other contraband when arrested, (6) whether he made incriminating statements when arrested, (7) whether he attempted to flee, (8) whether he made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he owned or had the right to possess the place where the contraband was found, (12) whether the contraband was found in an enclosed place, (13) whether he was found with a large amount of cash, (14) whether his conduct indicated a consciousness of guilt, (15) whether he made incriminating statements connecting himself to the contraband, (16) the quantity of the contraband, (17) whether he was observed in a suspicious area under suspicious circumstances; and (18) whether the defendant possessed weapons. *Evans*, 202 S.W.3d at 162 n.12; *Hargrove*, 211 S.W.3d 379, 386 (Tex.App.--San Antonio 2006, pet. ref'd); *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). These are simply some factors which may circumstantially establish the legal sufficiency of the evidence to prove knowing "possession." *Evans*, 202 S.W.3d at 162 n.12. They are not a litmus test. *Id.* An appellate court should not focus on the absence of certain affirmative links, but should consider the logical force of the links that are present. *Edwards v. State*, 178 S.W.3d 139, 144 (Tex.App.--Houston [1st Dist.] 2005, no pet.). It is not the number of links that is dispositive, but rather the logical force of all of the evidence, direct and circumstantial. *Evans*, 202 S.W.3d at 162.

*Analysis*

Several links are present in this case. First, Appellant was present when the search warrant was executed (link #1). Second, Appellant had a right to possess the place where the contraband was found (link #11). Appellant told Detective Lopez that he owned the house and the officers found a utility bill for the residence in Appellant's name. Appellant's control of the house gives rise to a reasonable inference that he had care, custody, or control of the cocaine found in plain view on the kitchen counter. *See Evans*, 202 S.W.3d at 163.

Third, both marihuana and cocaine were found in plain view on the kitchen counter (link #2). While Appellant's witness, Kenneth Berry, testified that he took cocaine to the residence that evening, the jury could have rejected the inference that the cocaine belonged exclusively to Berry given that the police had found cocaine residue in baggies taken from Appellant's trash during the weeks prior to execution of the search warrant. Fourth, the police found drug paraphernalia near the cocaine, namely, a large scale and a small scale (link #10). Detective Picard testified that these scales are typically used in the packaging of drugs. *See* TEX.HEALTH & SAFETY CODE ANN. § 481.002(17)(defining drug paraphernalia to include equipment, a product, or material that is used or intended for use in packaging a controlled substance); *Hargrove*, 211 S.W.3d at 386 (referring to scales as drug paraphernalia). Fifth, Appellant had a large quantity of cash in the house ($7,730) yet he had no regular source of income. Sixth, Appellant told the police that he had a large number of $100 bills because he knew the police would think that a large number of $20 bills would look like the proceeds of drug trafficking so he exchanged them for $100 bills. The jury could have inferred from this statement that Appellant was exhibiting a consciousness of guilt (link #14 in the list). The jury could have also concluded that the statement is incriminating because it indicates knowledge of drug trafficking (link #15). Seventh, there is evidence that Appellant possessed a handgun and a

Taser (link #18).  The logical force of these links is sufficient to permit the jury to rationally find that Appellant knowingly exercised control, management, or care over the cocaine.  Point of Error One is overruled.

## VIOLATION OF MOTION IN LIMINE

In Points of Error Two and Three, Appellant asserts that the trial court erred by denying his motion for mistrial based on several alleged violations of a motion in limine by the State. The trial court granted Appellant's motion in limine and required the State to approach the bench before eliciting evidence of gang affiliation, extraneous offenses, or prior convictions before the jury.  Appellant directs our attention to five instances during trial when the State allegedly violated the trial court's order:

1. The prosecutor referred to Appellant as the "known offender" when asking Officer Arturo Herrera whether a controlled substance was submitted to him for testing;

2. The prosecutor asked Officer Arturo Herrera if the controlled substance from Appellant had been tested more than once and he replied that he did not know whether something had happened in the past and he would have to check with the I/LEADS system;

3. Sgt. Barry Alvarez testified that the SWAT Team participated in the execution of the warrant for officer safety because there was a "past history";

4. Detective Lynn Picard testified that she did not know Appellant prior to this case so she looked him up on the I/LEADS system and obtained a photo of him;

5. Detective Lynn Picard testified that she checked the I/LEADS system for contacts associated with the residential address to be searched, she found two names, Shantell Britton and Appellant.

Appellant contends that as a result of these violations, the State put before the jury inadmissible

evidence related to prior arrests, prior convictions, and extraneous offenses which had not been disclosed.

*Untimely Objections*

The State argues that Appellant failed to preserve error with respect to each of the first three instances because his objections were untimely. A motion in limine is not a ruling on the admissibility of evidence but rather one regarding the administration of trial. *Harnett v. State*, 38 S.W.3d 650, 655 (Tex.App.--Austin 2000, pet. ref'd). It is a preliminary matter and normally preserves nothing for appellate review. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex.Crim.App. 2008). For error to be preserved with regard to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial. *Id.*; *see* TEX.R.APP.P. 33.1. Further, the objection must be timely. TEX.R.APP.P. 33.1(a)(1). An objection is timely if it comes at the earliest opportunity or as soon as the ground for objection becomes apparent. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex.Crim.App. 2006); *Moore v. State*, 999 S.W.2d 385, 403 (Tex.Crim.App. 1999). An objection made after the prosecutor has elicited the testimony typically comes too late. *Cruz v. State*, 238 S.W.3d 381, 385 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd).

In each of the first three instances, Appellant failed to object as soon as the ground for the objection became apparent. In the first instance, Appellant did not object until after the witness had been asked and had answered two other questions. In the second and third instances, Appellant did not object until after the witness had been asked and had answered another question. Appellant's untimely objections did not preserve error. *See Luna v. State*, 268 S.W.3d 594, 604 (Tex.Crim.App. 2008)(appellant's objection to testimony was untimely because it was made after question was asked and answered).

- 10 -

*Failure to Request Instruction to Disregard*

Regarding the other two alleged violations of the motion in limine, the record reflects that Appellant moved for mistrial without first requesting an instruction to disregard. A defendant's complaint regarding the admission of evidence may take three forms: (1) a timely, specific objection; (2) a request for an instruction to disregard; and (3) a motion for mistrial. *See Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). Each of these methods furthers the policies of preventing and correcting errors and conserving judicial resources. *Id.* An objection serves as a preemptive measure because it prompts the prevention of harmful events. *Id.* An instruction to disregard is a corrective measure because it attempts to cure any harm or prejudice resulting from events that have already occurred. *Id.* In a case where the prejudice is curable, an instruction eliminates the need for a mistrial and serves to conserve judicial resources. *Id.* A mistrial is also a corrective measure but it is reserved for those cases where an objection could not have prevented and an instruction to disregard could not cure the prejudice stemming from an event at trial. *Id.* A party who fails to request an instruction to disregard forfeits appellate review of events that could have been cured by such an instruction. *Id.* at 70. But if an instruction to disregard could have not had that effect, the only suitable remedy is a mistrial, and a motion for a mistrial is the only essential prerequisite to presenting the complaint on appeal. *Id.* When a party's first action is to move for mistrial, as in this case, the scope of appellate review is limited to the question whether the trial court erred in not taking the most serious action of ending the trial. *Id.*

We review a trial court's ruling on a motion for mistrial for an abuse of discretion. *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); *Wead v. State*, 129 S.W.3d 126, 129 (Tex.Crim.App. 2004). An appellate court must uphold the trial court's ruling if it was within

the zone of reasonable disagreement. *Wead*, 129 S.W.3d at 129. A mistrial is required only in extreme circumstances where the prejudice is incurable. *Archie v. State*, 221 S.W.3d 695, 699 (Tex.Crim.App.2007). A mistrial is the trial court's remedy for improper conduct that is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Hawkins*, 135 S.W.3d at 77.

The fourth and fifth alleged violations of the motion in limine occurred during the testimony of Detective Picard. She testified that she did not know Appellant prior to this case so she looked him up on the I/LEADS system and obtained a photo of him. Appellant's attorney immediately sought a mistrial because the testimony violated the motion in limine as it related to "prior bad acts." During cross-examination, defense counsel questioned Picard about her search warrant affidavit which included an allegation that the residence was controlled by Appellant and Shantell Britton. When Picard stated that she did not know who Britton was, defense counsel asked Picard whether she had just guessed about the information included in her affidavit. On re-direct, the prosecutor asked Picard to explain how she attempted to identify the people who were living in the residence. Picard explained that she used the I/LEADS system to determine who lived at the residence. She told the jury that the I/LEADS system is a police database generated by all of the incident reports. On this occasion, her search showed that Appellant and Shantell Britton were associated with that address but it did not necessarily mean that they had been arrested because the database included information regarding victims and witnesses as well. Appellant moved for a mistrial based on a violation of the motion in limine and because her testimony indicated that Appellant might have been arrested in the past.

When a defendant moves for mistrial without first requesting an instruction to disregard, as occurred in this case, he will obtain reversal only if the error could not have been cured by an

instruction to disregard. *Young*, 137 S.W.3d at 70. It is well established that testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard unless they are so clearly calculated to inflame the minds of the jury and are of such a nature as to suggest the impossibility of withdrawing the impression produced. *Kemp v. State*, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992). Assuming for the sake of argument that the testimony was inadmissible, a matter we do not decide, the detective's statements that she found Appellant in the I/LEADS system are not so inflammatory that an instruction to disregard would have been ineffective. *See Gardner v. State*, 730 S.W.2d 675, 696-97 (Tex.Crim.App. 1987)(witness's statement that "[appellant] told me that even when he was in the penitentiary, that he had stomach problems" was cured by trial court's instruction to disregard); *Barney v. State*, 698 S.W.2d 114, 124-25 (Tex.Crim.App. 1985)(testimony that victim did not like defendant because "he was an ex-con" was improper reference to extraneous offense, but cured by jury instruction). By failing to request that the jury be instructed to disregard these portions of Picard's testimony, Appellant has forfeited his complaints. *See Young*, 137 S.W.3d at 70. The trial court did not by denying Appellant's motion for mistrial related to Picard's testimony.

*Comment on Weight of Evidence*

Finally, we will examine Appellant's argument that the prosecutor impermissibly commented on the weight of the evidence while marking an exhibit. Near the beginning of the State's case-in-chief, the prosecutor stated, while marking the search warrant affidavit: "Let the record reflect that I'm showing defense counsel what is being marked over State's Exhibit Number 1 from the motion to suppress as State's Exhibit Number 2 for trial." Defense counsel moved for a mistrial on the ground that the prosecutor's statements were an indirect comment on the weight of the evidence.

- 13 -

Rule 38.1(i) requires that an appellant's brief contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX.R.APP.P. 38.1(i). Appellant's brief does not include any authority supporting his contention that the prosecutor's comment constituted an impermissible comment on the weight of the evidence. This portion of Point of Error Three presents nothing for review because it is inadequately briefed. *See* TEX.R.APP.P. 38.1(i); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex.Crim.App. 2000) (explaining an argument that is not supported by citation to legal authority presents nothing for appellate review). Points of Error Two and Three are overruled. The judgment of the trial court is affirmed.

July 25, 2012

_____
ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
(Antcliff, J., not participating)

(Do Not Publish)