COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 LAFONDA GRAY,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00003-CR
  
                          Appeal from
  
 120th District
 Court
  
 of EL Paso County,
 Texas
  
 (TC # 20100D01838)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

Lafonda Gray appeals his conviction of possession of less than one gram
of cocaine.  A jury found Appellant
guilty and the trial court assessed his punishment at confinement in the state
jail for twenty-four months.  We affirm.

FACTUAL SUMMARY

            In the early part of 2010, Detective
Lynn Picard received an anonymous Crime Stoppers tip that drugs were being sold
out of 11009 Rockdale in El Paso.  Picard
conducted surveillance of the residence in February and March of 2010 in an
effort to verify the tip but she was unsuccessful.  Consequently, she began doing trash pick-ups
at the residence in an effort to search for drug residue or paraphernalia.  On March 10, 2010, Picard and Detective
Sergio Lopez went to Appellant’s residence early in the morning prior to curb-side
trash pick-up and removed the trash bags from the bin.  Picard and Lopez found mail addressed to
Appellant, a couple of sandwich baggies with cut corners, and marihuana
stems.  Baggies with the cut corners are
used in packaging of street level narcotics.  She also found cocaine residue on one of the
cut corners.  Picard picked up the trash
again two weeks later and found additional baggies with cut corners, marihuana
stems and seeds, and marihuana “roaches.” 
She tested one of the cut corners and found cocaine residue.  Picard also found FoodSaver bags which are
used to package marihuana.  Approximately
two weeks later, Picard picked up the trash again and found marihuana stems and
seeds, cut corners from baggies, and a Ziploc bag that tested positive for
cocaine.  She also found a document
bearing Appellant’s name.  

Based
on the information she had gathered, Picard obtained a search warrant for
Appellant’s residence.  Picard and Lopez
were assisted by the SWAT Team when they executed the search warrant at 5:20
a.m. on April 16, 2010.  The SWAT Team
entered first and secured Appellant, Demarko Gray, and Kenneth Berry.  When Lopez saw Appellant seated outside by
the front door of the residence, Lopez asked who owned the house so he could
give him the search warrant.  Appellant
told Lopez that it was his house and his bedroom was in the northwest corner of
the house.  In the kitchen, Picard found
marihuana, a spoon with white residue on it which tested positive for cocaine,
and a large scale.  She also found a
small digital scale in a drawer along with small Ziploc baggies and a bill from
CitiCard addressed to Appellant.  Picard
testified that the small baggies are commonly used to package drugs for
sale.  In another drawer, the officers
found a gun.  Picard explained that the
larger scales are typically used when packaging larger quantities of drugs like
marihuana because they are measured in pounds. 
The smaller digital scales are used in the packaging of smaller
quantities of drugs.  In the living room,
the officers found marihuana roaches and stems, and a Taser.  In the dining room, one of the officers found
a water bill for the residence in Appellant’s name as well as a Bank of America
statement.  The officers also searched
the bedrooms.  In the northwest bedroom,
the officers found an expired driver’s license and another document bearing
Appellant’s name.  They searched the
dresser in that bedroom and found a large sum of cash.  They also found a lockbox which contained
more cash and a Texas identification card belonging to Appellant.  The officers found $5,255 in Appellant’s
bedroom.  The police found an additional
$2,475 hidden inside of a shoe in the bedroom used by Demarko.  Demarko denied ownership of the money but
Appellant claimed that it was his money. 
When asked whether he was employed, Appellant told the officers that he
worked for Triple A Construction and for a mechanic’s shop, but he could not
provide the officers with any information or telephone numbers to verify his
employment.  Sgt. Barry Alvarez asked
Appellant why he had so many $100 bills in the lockbox and he said it was
because he knew the police would be looking for $20 bills and would be less
likely to seize the money as the proceeds of drug trafficking so he exchanged
the $20 bills for $100 bills.  Sgt.
Alvarez testified that cocaine is sold to street level users in $20
bindles.  The white powdery substance found on the spoon was submitted to the El
Paso Police Department Crime Lab for testing. 
The first analyst determined that the substance was cocaine and it
weighed .04 grams.  The second analyst
likewise determined that it was cocaine but it weighed .03 grams because a
portion of the substance had been used in the prior testing.  

Appellant’s older brother, Demarko Gray, testified for the defense.  He lives with his grandmother but he has some
clothes and other items at Appellant’s house. 
Demarko admitted that the gun found in the kitchen was his.  He put it in the kitchen drawer when he heard
the police announce that they were entering the house.  Appellant keeps Demarko’s pit bulls at the
house because their grandmother did not want the dogs in her yard because she
has a garden.  Demarko sells the pit bull
puppies for $500 to $600 each and he shares part of the money with
Appellant.  On cross-examination, Demarko
admitted that he had only sold one litter of puppies and he had not sold any
from the second litter because they were only five weeks old.  Demarko explained that he used the large
scale to weigh the puppies.  Demarko and
Appellant also have a pressure washing business and they make $400 to $500 per
week.  On cross-examination, Demarko
testified that they charge $10 per car and usually wash ten to twenty cars at
the flea market on Fridays and Saturdays. 
They have a keyboard and recording equipment and sometimes charge other
people to use the equipment.  He
estimated they made approximately $1,000 per month with this business.  Demarko and Appellant also purchase clothes wholesale
from China and sell them out of the house. 
Demarko admitted that he and Kenneth Berry had smoked marihuana the
night before the police entered the house, but he denied using cocaine.  Demarko was charged with possession of
marihuana and cocaine.  The cocaine
charge was dismissed and he entered a plea of guilty to possession of
marihuana.  

Kenneth Berry testified that he and Ronald Turner went to visit Demarko
at Appellant’s house.  He took some
“chronic” or high-grade marihuana to the house and he smoked it with Ronald and
Demarko.  They played games on the Xbox
for a while and Ronald left.  Berry also
took seven grams of cocaine he had purchased earlier that day for $200, a
spoon, and a small scale to the house.  After
Demarko fell asleep, Berry started using the cocaine by placing it in the spoon
and snorting it.  He used all of the
cocaine by himself.  

Detective Lopez testified on rebuttal that a street level user typically
buys a “20” or .3 to .5 grams of cocaine for $20.  For $200, a person can purchase what is
referred to as “a seven” or about seven grams of cocaine.  That large an amount is usually purchased by
a dealer, not a street level user.  He
had never known anyone to use seven grams of cocaine in a twelve hour period by
himself.  Further, people typically
snorted cocaine from little vials or the corners of baggies and he had never
heard of a person snorting it from a measuring spoon like Berry had claimed he
had done.  A measuring spoon is more
typically used to mix and measure cocaine for distribution.  During the investigation after the search,
Demarko did not claim that the marihuana was his.  Likewise, Berry did not tell the officers
that the cocaine was his.  

The jury rejected Appellant’s defense and found him guilty of possessing
less than one gram of cocaine as charged in the indictment.  He raises three points of error on appeal.

LEGAL SUFFICIENCY

            In his first point of error,
Appellant challenges the legal and factual sufficiency of the evidence to
support his conviction.  In 2010, the
Court of Criminal Appeals abandoned factual sufficiency review in those cases
where the burden of proof is beyond a reasonable doubt.  Brooks
v. State, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful
distinction between the legal and factual sufficiency standards and no
justification for retaining both standards, therefore overruling the factual
sufficiency review adopted in Clewis v.
State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)).  The legal sufficiency standard articulated in Jackson v. Virginia, 443 U.S. 307, 319,
99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court
applies in determining whether the evidence is sufficient to support a
conviction.  Brooks, 323 S.W.3d at 894-95.  Therefore, in accordance with Brooks, we review Appellant’s legal and
factual sufficiency claims together under the Jackson legal-sufficiency standard and determine whether the
evidence is sufficient to support the challenged elements of the criminal
offense beyond a reasonable doubt.  See Brooks, 323 S.W.3d 894-95, citing Jackson, 443 U .S. at 319, 99
S.Ct. 2789.

Standard of Review and Applicable Law

Under
the Jackson standard, a reviewing
court must consider all evidence in the light most favorable to the verdict and
in doing so determine whether a rational justification exists for the jury's
finding of guilt beyond a reasonable doubt.  Brooks,
323 S.W.3d at 894-95, citing Jackson,
443 U.S. at 319, 99 S.Ct. at 2789.  As
the trier of fact, the jury is the sole judge as to the weight and credibility
of witness testimony, and therefore, on appeal we must give deference to the
jury’s determinations.  Brooks, 323 S.W.3d at 894-95.  If the record contains conflicting inferences,
we must presume the jury resolved such facts in favor of the verdict and defer
to that resolution.  Id.  On appeal, we serve only
to ensure the jury reached a rational verdict, and we may not reevaluate the
weight and credibility of the evidence produced at trial and in so doing
substitute our judgment for that of the fact finder.  King v.
State, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000).  This standard applies equally to both direct
and circumstantial evidence. King v.
State, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).

A
person commits an offense if he knowingly or intentionally possesses a
controlled substance in penalty group 1. 
Tex.Health & Safety Code Ann.
§ 481.115(a)(West 2010).  Cocaine
is a controlled substance in penalty group 1. 
Tex.Health & Safety Code Ann.
481.102(3)(D).  The Penal Code
defines “possession” as actual care, custody, control, or management.  Tex.Penal
Code Ann. § 1.07(a)(39)(West Supp. 2011).  To prove unlawful possession of a controlled
substance, the State must prove that (1) the accused exercised control,
management, or care over the substance; and (2) the accused knew the matter
possessed was contraband.  Poindexter v. State, 153 S.W.3d 402, 405
(Tex.Crim.App. 2005).  Mere presence at a
location where drugs are found is insufficient, by itself, to establish actual
care, custody, or control of those drugs. 
Evans v. State, 202 S.W.3d
158, 162 (Tex.Crim.App. 2006).  When the
accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control
over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.  Poindexter,
153 S.W.3d at 406.

A nonexclusive list of factors that can be sufficient, either singly or
in combination, to establish someone’s possession of contraband include:  (1) the defendant’s presence when a search is
conducted, (2) whether the contraband was in plain view, (3) the defendant’s
proximity to and the accessibility of the contraband, (4) whether he was under
the influence of a controlled substance or narcotic when arrested, (5) whether
he possessed other contraband when arrested, (6) whether he made incriminating
statements when arrested, (7) whether he attempted to flee, (8) whether he made
furtive gestures, (9) whether there was an odor of contraband, (10) whether
other contraband or drug paraphernalia were present, (11) whether he owned or
had the right to possess the place where the contraband was found, (12) whether
the contraband was found in an enclosed place, (13) whether he was found with a
large amount of cash, (14) whether his conduct indicated a consciousness of
guilt, (15) whether he made incriminating statements connecting himself to the
contraband, (16) the quantity of the contraband, (17) whether he was observed
in a suspicious area under suspicious circumstances; and (18) whether the
defendant possessed weapons.  Evans, 202 S.W.3d at 162 n.12; Hargrove, 211 S.W.3d 379, 386
(Tex.App.--San Antonio 2006, pet. ref’d); Lassaint
v. State, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.).  These are simply some factors which may
circumstantially establish the legal sufficiency of the evidence to prove
knowing “possession.”  Evans, 202 S.W.3d at 162 n.12.  They are not a litmus test.  Id.  An appellate court should not focus on
the absence of certain affirmative links, but should consider the logical force
of the links that are present.  Edwards v. State, 178 S.W.3d 139, 144
(Tex.App.--Houston [1st Dist.] 2005, no pet.).  It is not the number of links that is
dispositive, but rather the logical force of all of the evidence, direct and
circumstantial.  Evans, 202 S.W.3d at 162.

Analysis

            Several links are present in this
case.  First, Appellant was present when
the search warrant was executed (link #1). 
Second, Appellant had a right to possess the place where the contraband
was found (link #11).  Appellant told
Detective Lopez that he owned the house and the officers found a utility bill
for the residence in Appellant’s name.  Appellant’s
control of the house gives rise to a reasonable inference that he had care,
custody, or control of the cocaine found in plain view on the kitchen
counter.  See Evans, 202 S.W.3d at 163. 


Third,
both marihuana and cocaine were found in plain view on the kitchen counter
(link #2).  While Appellant’s witness,
Kenneth Berry, testified that he took cocaine to the residence that evening,
the jury could have rejected the inference that the cocaine belonged
exclusively to Berry given that the police had found cocaine residue in baggies
taken from Appellant’s trash during the weeks prior to execution of the search
warrant.  Fourth, the police found drug paraphernalia
near the cocaine, namely, a large scale and a small scale (link #10).  Detective Picard testified that these scales
are typically used in the packaging of drugs. 
See Tex.Health & Safety Code Ann. § 481.002(17)(defining drug
paraphernalia to include equipment, a product, or material that is used or
intended for use in packaging a controlled substance); Hargrove, 211 S.W.3d at 386 (referring to scales as drug
paraphernalia).  Fifth, Appellant had a
large quantity of cash in the house ($7,730) yet he had no regular source of
income.  Sixth, Appellant told the police
that he had a large number of $100 bills because he knew the police would think
that a large number of $20 bills would look like the proceeds of drug
trafficking so he exchanged them for $100 bills.  The jury could have inferred from this
statement that Appellant was exhibiting a consciousness of guilt (link #14 in
the list).  The jury could have also concluded
that the statement is incriminating because it indicates knowledge of drug
trafficking (link #15).  Seventh, there
is evidence that Appellant possessed a handgun and a Taser (link #18).  The logical force of these links is
sufficient to permit the jury to rationally find that Appellant knowingly exercised
control, management, or care over the cocaine. 
Point of Error One is overruled.

VIOLATION OF MOTION IN LIMINE

            In Points of Error Two and Three,
Appellant asserts that the trial court erred by denying his motion for mistrial
based on several alleged violations of a motion in limine by the State.  The trial court granted Appellant’s motion in
limine and required the State to approach the bench before eliciting evidence
of gang affiliation, extraneous offenses, or prior convictions before the
jury.  Appellant directs our attention to
five instances during trial when the State allegedly violated the trial court’s
order:

1.      The
prosecutor referred to Appellant as the “known offender” when asking Officer Arturo
Herrera whether a controlled substance was submitted to him for testing; 

2.      The
prosecutor asked Officer Arturo Herrera if the controlled substance from
Appellant had been tested more than once and he replied that he did not know
whether something had happened in the past and he would have to check with the
I/LEADS system;  

3.      Sgt.
Barry Alvarez testified that the SWAT Team participated in the execution of the
warrant for officer safety because there was a “past history”;

4.      Detective
Lynn Picard testified that she did not know Appellant prior to this case so she
looked him up on the I/LEADS system and obtained a photo of him; 

5.      Detective
Lynn Picard testified that she checked the I/LEADS system for contacts
associated with the residential address to be searched, she found two names,
Shantell Britton and Appellant. 

Appellant contends
that as a result of these violations, the State put before the jury
inadmissible evidence related to prior arrests, prior convictions, and extraneous
offenses which had not been disclosed.  

Untimely Objections

            The State argues that Appellant
failed to preserve error with respect to each of the first three instances
because his objections were untimely.  A motion
in limine is not a ruling on the admissibility of evidence but rather one
regarding the administration of trial.  Harnett v. State, 38 S.W.3d 650, 655
(Tex.App.--Austin 2000, pet. ref’d).  It
is a preliminary matter and normally preserves nothing for appellate review.  Fuller
v. State, 253 S.W.3d 220, 232 (Tex.Crim.App. 2008).  For error to be preserved with regard to the
subject of a motion in limine, an objection must be made at the time the subject
is raised during trial.  Id.; see
Tex.R.App.P. 33.1.  Further, the objection must be timely.  Tex.R.App.P.
33.1(a)(1).  An objection is timely if it
comes at the earliest opportunity or as soon as the ground for objection
becomes apparent.  Gillenwaters v. State, 205 S.W.3d 534, 537 (Tex.Crim.App. 2006); Moore v. State, 999 S.W.2d 385, 403
(Tex.Crim.App. 1999).  An objection made
after the prosecutor has elicited the testimony typically comes too late.  Cruz v.
State, 238 S.W.3d 381, 385 (Tex.App.--Houston [1st Dist.] 2006, pet. ref’d).

            In each of the first three
instances, Appellant failed to object as soon as the ground for the objection
became apparent.  In the first instance,
Appellant did not object until after the witness had been asked and had answered
two other questions.  In the second and
third instances, Appellant did not object until after the witness had been
asked and had answered another question. 
Appellant’s untimely objections did not preserve error.  See
Luna v. State, 268 S.W.3d 594, 604 (Tex.Crim.App. 2008)(appellant’s
objection to testimony was untimely because it was made after question was
asked and answered).

Failure to Request Instruction to Disregard

            Regarding the other two alleged
violations of the motion in limine, the record reflects that Appellant moved for
mistrial without first requesting an instruction to disregard.  A defendant’s complaint regarding the
admission of evidence may take three forms: 
(1) a timely, specific objection; (2) a request for an instruction to
disregard; and (3) a motion for mistrial. 
See Young v. State, 137 S.W.3d
65, 69 (Tex.Crim.App. 2004).  Each of
these methods furthers the policies of preventing and correcting errors and
conserving judicial resources.  Id. 
An objection serves as a preemptive measure because it prompts the
prevention of harmful events.  Id. 
An instruction to disregard is a corrective measure because it attempts
to cure any harm or prejudice resulting from events that have already
occurred.  Id.  In a case where the
prejudice is curable, an instruction eliminates the need for a mistrial and
serves to conserve judicial resources.  Id. 
A mistrial is also a corrective measure but it is reserved for those
cases where an objection could not have prevented and an instruction to
disregard could not cure the prejudice stemming from an event at trial.  Id.  A party who fails to request an instruction
to disregard forfeits appellate review of events that could have been cured by
such an instruction.  Id. at 70.  But if an instruction to disregard could have
not had that effect, the only suitable remedy is a mistrial, and a motion for a
mistrial is the only essential prerequisite to presenting the complaint on
appeal.  Id.  When a party’s first
action is to move for mistrial, as in this case, the scope of appellate review
is limited to the question whether the trial court erred in not taking the most
serious action of ending the trial.  Id.

We
review a trial court’s ruling on a motion for mistrial for an abuse of
discretion.  Hawkins v. State, 135 S.W.3d 72, 77 (Tex.Crim.App. 2004); Wead v. State, 129 S.W.3d 126, 129
(Tex.Crim.App. 2004).  An appellate court
must uphold the trial court’s ruling if it was within the zone of reasonable
disagreement.  Wead, 129 S.W.3d at 129.  A
mistrial is required only in extreme circumstances where the prejudice is
incurable.  Archie v. State, 221 S.W.3d 695, 699 (Tex.Crim.App.2007).  A mistrial is the trial court’s remedy for
improper conduct that is so prejudicial that expenditure of further time and
expense would be wasteful and futile.  Hawkins, 135 S.W.3d at 77.

            The fourth and fifth alleged
violations of the motion in limine occurred during the testimony of Detective
Picard.  She testified that she did not
know Appellant prior to this case so she looked him up on the I/LEADS system
and obtained a photo of him.  Appellant’s
attorney immediately sought a mistrial because the testimony violated the
motion in limine as it related to “prior bad acts.”  During cross-examination, defense counsel
questioned Picard about her search warrant affidavit which included an
allegation that the residence was controlled by Appellant and Shantell
Britton.  When Picard stated that she did
not know who Britton was, defense counsel asked Picard whether she had just
guessed about the information included in her affidavit.  On re-direct, the prosecutor asked Picard to
explain how she attempted to identify the people who were living in the
residence.  Picard explained that she
used the I/LEADS system to determine who lived at the residence.  She told the jury that the I/LEADS system is
a police database generated by all of the incident reports.  On this occasion, her search showed that
Appellant and Shantell Britton were associated with that address but it did not
necessarily mean that they had been arrested because the database included
information regarding victims and witnesses as well.  Appellant moved for a mistrial based on a
violation of the motion in limine and because her testimony indicated that
Appellant might have been arrested in the past. 


When
a defendant moves for mistrial without first requesting an instruction to
disregard, as occurred in this case, he will obtain reversal only if the error
could not have been cured by an instruction to disregard.  Young,
137 S.W.3d at 70.  It is well established
that testimony referring to or implying extraneous offenses can be rendered
harmless by an instruction to disregard unless they are so clearly calculated
to inflame the minds of the jury and are of such a nature as to suggest the
impossibility of withdrawing the impression produced.  Kemp v.
State, 846 S.W.2d 289, 308 (Tex.Crim.App. 1992).  Assuming for the sake of argument that the
testimony was inadmissible, a matter we do not decide, the detective’s
statements that she found Appellant in the I/LEADS system are not so
inflammatory that an instruction to disregard would have been ineffective.  See
Gardner v. State, 730 S.W.2d 675, 696-97 (Tex.Crim.App. 1987)(witness’s statement
that “[appellant] told me that even when he was in the penitentiary, that he
had stomach problems” was cured by trial court’s instruction to disregard); Barney v. State, 698 S.W.2d 114, 124-25
(Tex.Crim.App. 1985)(testimony that victim did not like defendant because “he
was an ex-con” was improper reference to extraneous offense, but cured by jury
instruction).  By failing to request that
the jury be instructed to disregard these portions of Picard’s testimony,
Appellant has forfeited his complaints.  See Young, 137 S.W.3d at 70.  The trial court did not by denying
Appellant’s motion for mistrial related to Picard’s testimony.

Comment on Weight of Evidence

Finally,
we will examine Appellant’s argument that the prosecutor impermissibly
commented on the weight of the evidence while marking an exhibit.  Near the beginning of the State’s
case-in-chief, the prosecutor stated, while marking the search warrant
affidavit:  “Let the record reflect that
I’m showing defense counsel what is being marked over State’s Exhibit Number 1
from the motion to suppress as State’s Exhibit Number 2 for trial.”  Defense counsel moved for a mistrial on the
ground that the prosecutor’s statements were an indirect comment on the weight
of the evidence.  

Rule
38.1(i) requires that an appellant’s brief contain “a clear and concise
argument for the contentions made, with appropriate citations to authorities
and to the record.”  Tex.R.App.P. 38.1(i).  Appellant’s brief does not include any
authority supporting his contention that the prosecutor’s comment constituted
an impermissible comment on the weight of the evidence.  This portion of Point of Error Three presents
nothing for review because it is inadequately briefed.  See Tex.R.App.P. 38.1(i); Rocha v. State, 16 S.W.3d 1, 20
(Tex.Crim.App. 2000) (explaining an argument that is not supported by citation
to legal authority presents nothing for appellate review).  Points of Error Two and Three are overruled.  The judgment of the trial court is affirmed.

 

July 25, 2012                                       ________________________________________________

ANN CRAWFORD McCLURE,
Chief Justice

 

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Antcliff, J., not participating)

 

(Do Not Publish)