**Opinion issued October 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

**NO. 01-12-00717-CR**
**NO. 01-12-00718-CR**

—————————————

**DONTAVIAN DESHUN WOODS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1319320 & 1319321**

---

## MEMORANDUM OPINION

Appellant Dontavian Deshun Woods was charged with possession of a controlled substance, cocaine, weighing more than four and less than 200 grams in trial court cause number 1319320. The indictment alleged that Woods used and exhibited a deadly weapon during the commission of that offense. Woods was also

charged with the felony offense of possession of a firearm by a felon in trial court cause number 1319321. These cases were tried together, and a jury found Woods guilty of both offenses. Woods was sentenced to 35 years' imprisonment for possession of cocaine and 20 years' imprisonment for possession of a firearm by a felon. Woods appeals both judgments, arguing that the evidence is insufficient to support his convictions, that the deadly weapon finding should be stricken because he was not arraigned on this finding, and that his counsel was ineffective.[1] We affirm.

## Background

On September 2, 2011, Special Agent J. Marquez with the Bureau of Alcohol, Tobacco and Firearms and other law enforcement officers set up surveillance on Apartment 1 at 1925 Ruth Street in Houston to observe a confidential informant's controlled buy of crack cocaine from Woods. Special Agent Marquez observed the confidential informant arrive at the apartment, meet with Woods, go inside, and return with crack cocaine.

---

[1] Appellate cause number 01-12-00717-CR is the appeal from the conviction for possession of cocaine, and appellate cause number 01-12-00718-CR is the appeal from the conviction for possession of a firearm. The cases were tried together and the reporter's record is identical in both appeals. Although Woods has filed separate briefs in each appeal, they contain some identical points of error. Accordingly, we address all of Woods's points of error in both cases in this single opinion.

Based on the controlled buy, officers obtained a search warrant for the apartment. SWAT (Special Weapons and Tactics) Officer P. Straker, along with other members of SWAT and the Houston Police Department, executed the warrant. After the group gained access to the apartment through a bedroom, Officer Straker observed Woods leaving through the apartment's front door. Officer Straker ordered Woods on the ground, and he complied. As another agent detained Woods, Officer Straker and others entered the apartment through the front door, which was still open. There they observed drugs, several firearms, and drug paraphernalia in plain view. The officers did not find anyone else inside.

Officers searched the apartment and found: (1) cocaine, cocaine residue, and liquid codeine on a table in the living room; (2) drug paraphernalia, including baggies, a digital scale, and beakers used to cook crack cocaine, in the kitchen and living room; and (3) a piece of crack cocaine in a baggie in the back bedroom. Additionally, officers found the following weapons in various places throughout the apartment: (1) a Mossberg 12 gauge shotgun found on the living room floor; (2) a Smith and Wesson revolver in a kitchen drawer; (3) a Marlin .30-30 caliber rifle underneath the love seat in the living room; (4) an Intratech 9 mm pistol underneath the bed in the back bedroom; and (5) a Glock .40 caliber underneath the bed in the back bedroom. The officers also found a bullet-proof vest on the bed in the back bedroom.

On a table in the living room, officers found a wallet containing Woods's driver's license. His driver's license identified his address as 2212 Barbee Street, Apartment 1 in Houston. The utilities and lease for Apartment 1 at 1925 Ruth Street were not held in Woods's name, and no fingerprints were found on the firearms discovered in the apartment.

At trial, Special Agent Marquez testified at length about the controlled buy that gave rise to the search warrant. She also testified that, based on her experience, she believed Woods was using the apartment as his place of business—to sell drugs—and that he lived elsewhere.

### Sufficiency of the Evidence: Possession of Cocaine and Firearms

Woods argues that the evidence is insufficient to support his convictions for possession of a controlled substance and possession of a firearm by a felon, because no evidence demonstrates that he possessed either the drugs or the guns found in the apartment.

## A. Standard of Review

An appellate court reviews legal and factual sufficiency challenges using the same standard of review. *See Griego v. State*, 337 S.W.3d 902, 903 (Tex. Crim. App. 2011). "Under this standard, evidence is insufficient to support a conviction if considering all record evidence in the light most favorable to the verdict, a factfinder could not have rationally found that each essential element of the

4

charged offense was proven beyond a reasonable doubt." *Gonzalez v. State*, 337 S.W.3d 473, 478 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979)). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Gonzalez*, 337 S.W.3d at 479. The sufficiency of the evidence is measured by the elements of the offense as defined in a hypothetically correct jury charge, which is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). If an appellate court finds the evidence insufficient under this standard, it must reverse the judgment and enter an order of acquittal. *Gonzalez*, 337 S.W.3d at 479 (citing *Tibbs v. Florida*, 457 U.S. 31, 41, 102 S.Ct. 2211, 2218 (1982)).

An appellate court determines whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence viewed in the light most favorable to the verdict. *Clayton v. State*, 235 S.W.3d

5

772, 778 (Tex. Crim. App. 2007) (quoting *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). When the record supports conflicting inferences, an appellate court presumes that the factfinder resolved the conflicts in favor of the verdict and defers to that resolution. *Id.* (citing *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793). "An appellate court likewise defers to the factfinder's evaluation of the credibility of the evidence and the weight to give the evidence." *Gonzalez*, 337 S.W.3d at 479. A court treats direct and circumstantial evidence equally: circumstantial evidence can be as probative as direct evidence, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 13).

**B.    Applicable Law**

A person commits the offense of possession of cocaine in an amount greater than four but less than two hundred grams if the person, (1) knowingly or intentionally, (2) possessed, (3) cocaine, (4) in an amount of greater than four but less than 200 grams. TEX. HEALTH & SAFETY CODE ANN. § 481.115(a), (d) (West 2010).

A person commits the offense of unauthorized possession of a firearm by a felon if the person has previously been convicted of a felony offense and possesses a firearm after the conviction and before the fifth anniversary of the person's release from confinement, community supervision, parole, or mandatory

supervision following the prior felony conviction, whichever date is later. *See* TEX. PENAL CODE ANN. § 46.04(a)(1) (West 2011); *James v. State*, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd).

In order to prove unlawful possession, of either cocaine or a firearm, the State must present evidence that: (1) the accused exercised control, management, or care over the contraband; and (2) the accused knew the matter possessed was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see also Corpus v. State*, 30 S.W.3d 35, 37–38 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (applying same sufficiency-of-the-evidence standard in cases involving possession of firearm by a felon as is applied in cases of possession of controlled substance and requiring State "to prove that appellant knew of the weapon's existence and that he exercised actual care, custody, control, or management over it.").

Possession need not be exclusive. *Wiley v. State*, 388 S.W.3d 807, 813 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd) (citing *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985)). When the accused is not in exclusive possession of the place where the contraband is found, then additional, independent facts and circumstances must affirmatively link the defendant to the contraband in such a way that it can reasonably be concluded that the defendant had knowledge of the contraband and exercised control over it. *Kibble v. State*, 340 S.W.3d 14, 18

(Tex. App.—Houston [1st Dist.] 2010, pet. ref'd); *Roberts v. State*, 321 S.W.3d 545, 549 (Tex. App.—Houston [14th Dist.] 2010, pet. ref'd). The evidence, whether direct or circumstantial, must establish, to the requisite level of confidence, that the accused's connection with the contraband was more than just fortuitous. *Poindexter*, 153 S.W.3d at 405–06 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "The rule simply [states] the common-sense notion that a person—such as a father, son, spouse, roommate, or friend— may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id.* at 406. The accused's presence at the scene where contraband is found is insufficient, by itself, to establish possession. *Roberts*, 321 S.W.3d at 549 (citing *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006)). However, presence or proximity when combined with other direct or circumstantial evidence may be sufficient to establish the elements of possession beyond a reasonable doubt. *Id.*

Links that may establish knowing possession include: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the contraband; (4) whether the defendant was under the influence of narcotics when arrested; (5) whether the defendant possessed other contraband when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the

8

defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the substance was found; (12) whether the place where the substance was found was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans*, 202 S.W.3d at 162, n.12; *James*, 264 S.W.3d at 219. The "number of . . . links proven is not as important as the logical force that they collectively create." *Wiley*, 388 S.W.3d at 814 (quoting *Hubert v. State*, 312 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)); *see James*, 264 S.W.3d at 219. "The absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links present." *Wiley*, 388 S.W.3d at 814 (quoting *James*, 264 S.W.3d at 219).

## C. Analysis

Here, the evidence sufficiently links Woods to the cocaine and the firearms and therefore permits a rational jury to find beyond a reasonable doubt that he possessed both. Woods was the only person present at the scene when the officers executed the search warrant, and he attempted to flee immediately after police forcibly entered through a bedroom. *See Evans*, 202 S.W.3d at 162, n.12 (presence when search conducted and attempt to flee are affirmative links); *Hargrove v.*

9

*State*, 211 S.W.3d 379, 387 (Tex. App.—San Antonio 2006, pet. ref'd) (evidence that defendant exited the back door of house immediately after police knocked on front door and announced their presence was affirmative link). Woods's wallet, with his driver's license inside, was on a table in the living room. Although the driver's license identified a different address as his residence, Special Agent Marquez testified that in her experience drug dealers sell drugs from a place other than where they live, and that she believed that Woods was using the apartment as his office or place of business for the purpose of selling drugs. Further, she testified that the confidential informant purchased crack cocaine from Woods at the apartment days before police executed the warrant. *See Evans*, 202 S.W.3d at 162, n.12 (evidence that defendant had right to possess place where contraband was found is affirmative link).

Additionally, many of the firearms, drugs and drug paraphernalia discovered inside the apartment were in plain view and accessible to anyone inside the apartment. *See id.* at 162, n.12 (whether contraband was in plain view, proximity and accessibility of contraband to defendant, and presence of contraband are affirmative links); *Hargrove*, 211 S.W.3d at 386 (presence of drug paraphernalia and weapons supported conclusion that defendant knew he possessed drugs and weapons); *Gregory v. State*, 159 S.W.3d 254, 260 (Tex. App.—Beaumont 2005, pet. ref'd) (considering as affirmative links large quantity of contraband in plain

10

view in a home that was easily accessible to defendant). In sum, the evidence thus demonstrates that Woods was present, had access to the apartment, which contained drugs and firearms in various places, many in plain view, and that he had a consciousness of guilt and attempted to flee when the officers arrived.

Woods contends that the evidence of possession is nevertheless insufficient because his wife testified that Woods lived in another location, his driver's license identified a different address, the utilities and lease agreement at the apartment were not in his name, the firearms found in the apartment were not registered to him, a prescription pill bottle found in the apartment was not in his name, and his fingerprints were not found in the apartment. While this evidence supports an inference that Woods lived elsewhere, the fact that he may not have lived in the place he sold drugs does not undermine the jury's finding that he exercised control, management, and care over the drugs and firearms found in the apartment.

Viewing the evidence in a light most favorable to the verdict, we hold that a rational jury could have concluded beyond a reasonable doubt that Woods exercised actual care, custody, control, or management over the cocaine and firearms found at the apartment. *See Hargrove*, 211 S.W.3d at 386–87 (holding evidence was sufficient to support finding that appellant possessed marijuana and body armor where evidence showed appellant was present and alone in the house when the contraband was seized; marijuana and body armor were easily accessible

11

to appellant; drug paraphernalia and weapons were found in plain view; and appellant attempted to flee when police arrived); *Evans*, 202 S.W.3d at 166 (holding evidence was sufficient to support jury's finding that appellant knowingly possessed cocaine where evidence showed appellant was present and alone in house where drugs were found; drugs were in plain view on table in front of him when police entered; he immediately knew why police were at house; and he received mail at that house).

Accordingly, we overrule Woods's points of error challenging the sufficiency of the evidence to support his convictions for possession of a controlled substance and possession of a firearm by a felon.

### Deadly Weapon Finding

Woods argues that the evidence is insufficient to support the jury's finding that he used or exhibited a deadly weapon during the commission of the offense of possession of a controlled substance. Specifically, he contends that the evidence was insufficient because he was outside the apartment when he was arrested, the evidence did not establish that he was an occupant of the apartment, police officers did not find drugs or a weapon on his person when he was arrested, his fingerprints were not found on the firearms recovered from the apartment, and the owner of the firearms was never identified.

12

A deadly weapon finding can be made if a deadly weapon "was used or exhibited during the commission of a felony offense." TEX. CODE CRIM. PROC. ANN. art. 42.12 3g(a)(2). Therefore, "we must determine whether a rational trier of fact could have found beyond a reasonable doubt that [a]ppellant used the guns to facilitate possession . . . of the narcotics." *Coleman v. State*, 145 S.W.3d 649, 652 (Tex. Crim. App. 2004). In the context of a deadly weapon finding, the term "use" means any employment of a deadly weapon, even simple possession, if that possession facilitates the associated felony. *Id.* The term "exhibit" requires a weapon to be consciously shown, displayed, or presented to be viewed. *Id.* When determining whether sufficient evidence supports a deadly weapon finding, courts may consider several factors, including: (1) the type of gun involved; (2) whether or not the gun was loaded; (3) whether or not the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the guns. *Id.* at 658–60 (Cochran, J., concurring).

Here, officers executing the search warrant found several firearms throughout the apartment, all of which were loaded. Specifically, officers observed (1) a Mossberg 12 gauge shotgun in plain view in the living room; (2) a

13

Smith and Wesson revolver in a drawer in the kitchen; (3) a Marlin .30-30 caliber rifle underneath the love seat in the living room; (4) an Intratech 9 mm pistol under the bed in the back bedroom; and (5) a Glock .40 caliber pistol under the bed in the back bedroom. One of the firearms in the living room was in plain view and the other was underneath a love seat, both in close proximity to the drugs and drug paraphernalia found in the living room. The firearm found in the kitchen drawer was in close proximity to the drug paraphernalia found in the kitchen. And the two guns in the back bedroom, while found under a bed, were nevertheless accessible to the apartment's occupants and in the same room as the baggie of crack. Thus, viewing the evidence in a light most favorable to the jury's finding, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Woods used the guns to facilitate possession of the narcotics. *See Castillo v. State*, __ S.W.3d __, 2012 WL 2924469, at *2–3 (Tex. App.—Houston [1st Dist.] July 12, 2012, no pet.) (holding evidence sufficient to support deadly weapon finding where police found assault rifle and shotgun, both of which were loaded, in immediate proximity to drugs and drug paraphernalia, and guns were found in plain view in room where defendant was sleeping); *Coleman*, 145 S.W.3d at 654–55 (holding evidence sufficient to support deadly weapon finding, despite the fact that defendant was handcuffed outside house, where drugs were found throughout house, and two were found inside a room with a safe containing two large bottles

14

of PCP and large amount of cash); *Gale v. State*, 998 S.W.2d 221, 222–23, 226 (Tex. Crim. App. 1999) (upholding deadly weapon finding where three rifles and a handgun, which were unloaded but could have been loaded within "seconds," "were virtually inches away from the contraband and its alleged proceeds").

We overrule Woods's point of error urging that the evidence is insufficient to support the deadly weapon finding.

### Arraignment on Deadly Weapon Paragraph

Woods contends that the "deadly weapon finding should be stricken from the judgment because the State did not arraign [him] on the deadly weapon paragraph."

Although a defendant is entitled to notice that the State will seek an affirmative finding that a deadly weapon was used during the commission of the charged crime, this notice need not be contained in the indictment as long as it is in writing. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993). The defendant is "simply 'entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution.'" *Id.* (quoting *Ex parte Beck*, 769 S.W.2d 525, 526 (Tex. Crim. App. 1989)); *Grettenberg v. State*, 790 S.W.2d 613, 614–15 (Tex. Crim. App. 1990); *see also Patterson v. State*, 138 S.W.3d 643, 647 (Tex. App.—Dallas 2004, no pet.) ("[A]n accused is 'entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time

15

of prosecution.'  The notice need not be included in the indictment; however, it must be in writing.  Failure to give any notice is fundamental error and requires that the deadly weapon finding be excluded from the judgment.") (citations omitted).

Here, the indictment charging Woods with possession of cocaine contained an allegation that at the time Woods committed the offense, "[h]e used and exhibited a deadly weapon, namely, a FIREARM, during the commission of said offense and during the immediate flight from said offense."  During the trial, the trial court realized that the State had not arraigned Woods on the deadly weapon allegation in the indictment.  The trial court then determined that Woods did not have to be arraigned on that allegation, and instead the court indicated that a special issue would be submitted to the jury.  The trial court read the charge, including the deadly weapon special issue, to the jury.  The jury returned an affirmative finding on the deadly weapon special issue, and the trial court entered a deadly weapon finding in the judgment.  Because the deadly weapon allegation appeared in the indictment, Woods had notice of the State's intent to seek an affirmative finding on the use of a deadly weapon and that use of a deadly weapon would be a fact issue.  The State was not also required to arraign Woods on that special issue. *See Grettenberg*, 790 S.W.2d at 614–15 (notice was sufficient where portion of indictment state had abandoned included allegation of use of a deadly

16

weapon); *see also Strickland v. State*, No. C14-90-00795-CR, 1992 WL 323426, at *2 (Tex. App.—Houston [14th Dist.] Nov. 5, 1992, no pet.) (not designated for publication) (rejecting claim that defendant must be arraigned on deadly weapon issue and stating "[t]here is no authority to support appellant's contention that he must be arraigned on the special plea and then be allowed to enter a plea on that issue").

Accordingly, we overrule Woods's challenge to the deadly weapon finding.

## Ineffective Assistance of Counsel

Woods argues that his trial counsel was ineffective for failing to object to hearsay and extraneous offense evidence and for failing to move to suppress the search warrant.

## A. Standard of Review

Both the federal and state constitutions guarantee an accused the right to have the assistance of counsel. *See* U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.051 (West Supp. 2012). The right to counsel includes the right to reasonably effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). Both state and federal claims of ineffective assistance of counsel are evaluated under the two prong analysis of *Strickland*. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim.

App. 1999). The first prong requires the appellant to demonstrate that counsel's performance was deficient, meaning that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The second prong requires the appellant to show that counsel's deficient performance prejudiced the defense. *Id.* This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial. *Id.* To establish prejudice, the appellant must prove there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). A reasonable probability is "a probability sufficient to undermine confidence in the outcome of the proceedings." *Id.* Unless an appellant can prove both prongs, an appellate court must not find counsel's representation to be ineffective. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). On direct appeal, a reviewing court will rarely be able to fairly evaluate the merits of an ineffective-assistance claim because the record on direct appeal is usually undeveloped and inadequately reflective of the reasons for defense counsel's actions at trial. *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007). The lack of a clear record

18

usually will prevent the appellant from meeting the first prong of *Strickland*, as the reasonableness of counsel's choices and actions during trial can be proven deficient only through facts that do not normally appear in the appellate record. *Id.* In order for an appellate court to find on direct appeal that counsel was ineffective, counsel's deficiency must be affirmatively demonstrated in the trial record. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). When the record is silent as to counsel's reasons for his conduct, finding counsel ineffective would call for speculation by the appellate court. *Stults v. State*, 23 S.W.3d 198, 208 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). An appellate court will not speculate about the reasons underlying defense counsel's decisions to find counsel ineffective. *Id.*; *Jackson*, 877 S.W.2d at 771. If appellant does not file a motion for new trial or request a hearing, or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective assistance claim on direct appeal. *Stults*, 23 S.W.3d at 208–09.

Moreover, "[i]t is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence." *Mata*, 226 S.W.3d at 430. Rather, in order to prevail on an ineffective-assistance claim on direct appeal, "the record must demonstrate that counsel's performance fell below an objective standard of reasonableness as a matter of law, and that no reasonable trial strategy could justify trial counsel's acts

19

or omissions, regardless of his or her subjective reasoning." *Lopez*, 343 S.W.3d at 143; *see also Mata*, 226 S.W.3d at 428–29 (recognizing exception to presumption of reasonable professional judgment when complained-of conduct by trial counsel is of type which no reasonably competent defense attorney would have engaged in for any reason).

## B.    Failure to Object to Evidence

Woods claims his trial counsel was ineffective for failing to object to hearsay and extraneous offense testimony offered by Special Agent Marquez describing the confidential informant's controlled buy of cocaine from Woods, which formed the basis for the search and arrest warrant. Woods also contends his trial counsel was ineffective for failing to object to Officer Straker's testimony that HPD and ATF agents were investigating known gang members in the apartment complex.

Woods did not move for a new trial. The record is silent as to his trial counsel's strategy, and there is no explanation from counsel revealing why he failed to object to the complained-of testimony. When the record is silent as to trial counsel's strategy, an appellate court may not speculate about why counsel acted as he did. *Stults*, 23 S.W.3d at 208; *Jackson*, 877 S.W.2d at 771. Even if the challenged evidence were inadmissible, trial counsel's failure to object may have been part of a reasonable trial strategy. *See Heiman v. State*, 923 S.W.2d 622,

20

626–27 (Tex. App.—Houston [1st Dist.] 1995, pet ref'd) (holding that failure to object to inadmissible extraneous offense testimony, in the absence of record showing counsel's reasons for not doing so, did not rise to level of ineffective assistance because failure to object could have been part of counsel's sound and plausible trial strategy); *Thomas v. State*, 886 S.W.2d 388, 392 (Tex. App.—Houston [1st Dist.] 1994, pet ref'd) (concluding that failure to object to hearsay testimony could have been part of trial counsel's plausible trial strategy).

We conclude that Woods has neither shown that his trial counsel's actions at trial were "so outrageous that no reasonable competent trial attorney would have done likewise," nor "rebutted the presumption that his trial counsel's actions were part of some sound trial strategy." *Mata*, 226 S.W.3d at 433; *see also Lopez*, 343 S.W.3d at 143–44 (concluding counsel was not ineffective for failing to object to hearsay because record was silent regarding counsel's strategy). Therefore, we hold that Woods has failed to satisfy the first prong of *Strickland* with regard to trial counsel's failure to object to the above-described evidence.

## C. Failure to File Motion to Suppress Search Warrant

Woods also argues that his trial counsel was ineffective for failing to move to suppress the September 3, 2011 search warrant, which he contends had expired before it was executed on September 7, 2011.

Article 18.06(a) of the Code of Criminal Procedure provides that a search warrant "must be executed within three days from the time of its issuance." TEX. CODE CRIM. PROC. ANN. art. 18.06(a) (West 2005). The method of computing the time for execution of a search warrant is determined by article 18.07, which provides that the time allowed for execution of a search warrant, "exclusive of the day of its issuance and of the day of its execution, is three whole days . . . ." TEX. CODE CRIM. PROC. ANN. art. 18.07(a)(2) (West Supp. 2012); *see also Williams v. State*, 965 S.W.2d 506, 507 (Tex. Crim. App. 1998) (holding that a warrant which directs it to be returned within three days, exclusive of the day of its execution, may be executed at any time on the fourth day after the date of issuance and, therefore, concluding that warrant issued on November 5th and executed on November 9th was valid). A search warrant that is not executed within the time period provided by articles 18.06(a) and 18.07 becomes "functus officio." *Green v. State*, 799 S.W.2d 756, 759 (Tex. Crim. App. 1990). Such a warrant has no further official force or effect, and any search whose legality depends on the warrant is unauthorized. *Id.*

The Court of Criminal Appeals has held that a search warrant issued on March 20th, and executed on March 25th, the *fifth* day after issuance, was stale and resulted in an invalid search. *Green*, 799 S.W.2d at 757, 761 (Article 18.07 requires a warrant to be "executed within a time frame of three days, exclusive of

the day of issuance and day of execution"). This Court has held that a search warrant must be executed by midnight of the fourth day after the day of its issuance and, therefore, a warrant that was issued on October 1st and executed on October 5th was valid. *See Gonzalez v. State*, 768 S.W.2d 436, 438 (Tex. App.— Houston [1st Dist.] 1989, no pet.).

Here, it is undisputed that the warrant was issued on September 3, 2011, and executed on September 7, 2011. The State had until midnight on the fourth day after the search warrant was issued, September 7, 2011, to execute it. *See* TEX. CODE CRIM. PROC. ANN. art. 18.07(a)(2); *Gonzalez*, 768 S.W.2d at 438. Therefore, the warrant was timely executed and trial counsel could not have been ineffective for failing to move to suppress the warrant for untimely execution. *See Green*, 799 S.W.2d at 757; *Gonzalez*, 768 S.W.2d at 438; *see also Williams*, 965 S.W.2d at 507 (holding that warrant may be executed at any time on the fourth day after the date of issuance and, therefore, warrant issued on November 5th and executed on November 9th was valid); *State v. Rico*, 241 S.W.3d 648, 650 (Tex. App.— Amarillo 2007, no pet.) (holding that State had until midnight on fourth day after search warrant was issued in which to execute it and, therefore, warrant issued on August 19th, and executed on August 24th, was stale and "functus officio").

We overrule Woods's points of error urging that his trial counsel was ineffective for failing to move to suppress the search warrant.

23

## Conclusion

We affirm the judgments of the trial court.


                                        Rebeca Huddle
                                        Justice


Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Do not publish.   Tex. R. App. P. 47.2(b).